## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90393 (CML)** |
| | § | |
| **VIRIDIS CHEMICAL, LLC**, *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |

## EMERGENCY MOTION FOR ENTRY
## OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
## THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
## ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
## (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**
>
> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on March 9, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 9, 2026 at 4:00 p.m. in Courtroom 402, Floor 4, 515 Rusk Avenue, Houston, TX 77002.**

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436). The location of the Debtors' corporate headquarters and the Debtors' service address is: 4582 Kingwood Drive, Suite E #152, Kingwood, Texas 77345.

> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's home page.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") file this *Emergency Motion for Entry of Interim And Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "***Motion***") and in support respectfully submit the following:

<u>**PRELIMINARY STATEMENT**</u>

1.      By this Motion, the Debtors seek authority to use Cash Collateral (as defined below) of the Secured Noteholders (as defined below) to fund their limited operations and expenses associated with these chapter 11 cases.  Absent the authority to use Cash Collateral, even for a limited period of time, the Debtors will be unable to fund administrative expenses in these chapter 11 cases and run a value-maximizing sale process, which will cause immediate and irreparable harm to the Debtors and their stakeholders.

2.      The foundation of these chapter 11 cases is the continuation of the Debtors' prepetition marketing and sale process.  To support the sale process, the Debtors and the Secured

4906-4106-5362

Notes Agent (as defined below), on behalf of the Secured Noteholders, have agreed to the terms under which the Debtors can continue to use cash on hand, all of which constitutes the Secured Noteholders' Cash Collateral, to market their assets to obtain the highest and best bid and the most value-maximizing outcome possible for the Debtors and their stakeholders.  The use of Cash Collateral will allow the Debtors to continue to pursue a sale of all or substantially all of their assets under section 363 of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.    The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The statutory bases for the relief requested herein are sections 105, 361, 362(d), 363(e), 503(b), and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 2002, 4001, 6004, and 9014, rules 1075-1, 4001-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## EMERGENCY CONSIDERATION

6.    In accordance with Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion.  The Debtors submit that an immediate and orderly transition into chapter 11 is critical to the success of these chapter 11 cases.  As discussed in detail below and in

3

the First Day Declaration (as defined below), any delay in granting the relief requested could inhibit the Debtors' ability to preserve and maximize the value of their estates and cause immediate and irreparable harm.  As such, the Debtors submit that emergency consideration is necessary and respectfully request that this Motion be heard at the Debtors' first day hearings.

**BACKGROUND**

7.      Viridis Chemical, LLC, together with its Debtor affiliates, is a privately-held, leading developer of bio-based, low-carbon chemical technology.  Through its proprietary Prairie Green™ catalytic process, Viridis produces ethyl acetate using only 100% corn-based ethanol. Viridis is in the process of relocating and reconstructing its ethyl acetate plant, originally located in Columbus, Nebraska, to Peoria, Illinois.  The new Peoria site, situated on the Illinois River, offers key logistical advantages, including co-location of the plant with a high-purity alcohol plant, access to all major rail lines and barge-navigable routes connecting to the Mississippi River, and proximity to Viridis' core ethyl acetate customers in the Midwest and Northeast.

8.      On the date hereof (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

9.      Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the *Declaration of Patrick D. Killian in Support of Chapter 11 Petitions and First Day Pleadings* (the "***First Day Declaration***"), and the *Declaration of Paul M. Henson, Jr. in Support of the Emergency Motion for Entry of Interim And*

4

*Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Henson Declaration**") filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

10.     By this Motion, the Debtors seek entry of an interim order (the "**Interim Order**"), substantially in the form attached hereto as **Exhibit A**, including, among other things:

i.      authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), of the Secured Noteholders under that certain Note Purchase Agreement for the senior secured convertible promissory notes (collectively, the "**Secured Notes**") dated as of August 8, 2023 (collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time prior to the Petition Date, the "**Secured Notes Documents**") by and among Viridis Chemical, LLC ("**Viridis**"), as issuer, Viridis Chemical NE Asset Co 1, LLC and Viridis Chemical NE Asset Co 2, LLC, as subsidiary guarantors, EIV Viridis Chemical, LLC and a minority investor, as purchaser parties thereto (in such capacities, the "**Secured Noteholders**"),[3] and EIV Viridis Chemical, LLC, as the collateral agent (the "**Secured Notes Agent**"), solely in accordance with the terms of the Interim Order and (ii) grant adequate protection to the Secured Noteholders (as defined below) as set forth herein;

ii.     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

iii.    subject to the entry of the Final Order (as defined below), except to the extent of the Carve Out (as defined below), the waiver of all rights to surcharge any Prepetition Secured Notes Collateral (as defined in the Interim Order) or Adequate Protection Collateral (as defined in the Interim Order) under section 506(c) of the Bankruptcy Code;

---

[2]   Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declaration.

[3]   EIV Viridis Chemical, LLC is the majority Secured Noteholder (in such capacity, the "**Majority Secured Noteholder**").

4906-4106-5362

iv.     subject to the entry of the Final Order, for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to any of the Secured Noteholders with respect to the proceeds, products, offspring, or profits of any of the Prepetition Secured Notes Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

v.      that this Court schedule a final hearing (the "***Final Hearing***") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "***Final Order***");

vi.     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

vii.    granting related relief.

## SUMMARY OF TERMS OF USE OF CASH COLLATERAL

11.     In accordance with Bankruptcy Rules 4001(b)–(d) the Complex Case Procedures, as incorporated by Bankruptcy Local Rule 1075-1, the below chart summarizes the significant terms of the Interim Order:

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| **Parties Asserting an Interest in Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B) | Secured Noteholders | Interim Order, ¶ F |
| **Purposes for Use of Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B) | The Debtors' use of the Cash Collateral will be to, among other things, fund payroll, working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred during these chapter 11 cases. | Interim Order, ¶ H(iii) |
| **Budget Provisions**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B) | The use of Cash Collateral must be in accordance with the Initial Approved Budget, which is attached as Exhibit 1 to the Interim Order, subject to Permitted Variances. | Interim Order, ¶ 2; Ex. 1 |
| **Duration of Use of Cash Collateral / Termination Date** | Until the occurrence of a Termination Event. | Interim Order, ¶ 6 |

4906-4106-5362

Case 26-90393   Document 14   Filed in TXSB on 03/08/26   Page 7 of 79

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| Fed. R. Bankr. P. 4001(b)(1)(B) | | |
| **Termination Events / Sale Milestones**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)<br><br>Complex Case Procedures ¶ C(8)(a) | Termination events include, among other things, (i) the Final Order not entered within 45 days of the Petition Date, (ii) material default of the Interim Order, (iii) without the prior written consent of the Required Secured Noteholders, a bidding procedures motion is not filed within three (3) days after the Petition Date, (iv) without the prior written consent of the Required Secured Noteholders, an order approving the bidding and auction procedures is not entered by the court within 25 days after the Petition Date, (v) a modification, stay, or reversal of the Interim Order for more than 5 business days, (vi) conversion to chapter 7 of the Bankruptcy Code, (vii) appointment of a chapter 11 trustee, (viii) the failure by the Debtors to comply with the budget provisions set forth in the Interim Order (subject to Permitted Variances), (ix) termination of the Debtors' exclusivity period, (x) order granting relief from the automatic stay that allows a third party to proceed with remedies against Prepetition Secured Notes Collateral with a value in excess of $200,000, (xi) payment of prepetition claims junior in interest to the Prepetition Secured Notes Lien not permitted by an order of the Court, and (xii) entry of an order approving senior secured or pari passu debtor in possession financing without written consent of the Required Secured Noteholders. | Interim Order, ¶ 6 |
| **Liens, Cash Payments, or Adequate Protection Provided for Use of Cash Collateral**<br><br>Fed R. Bankr. P. 4001(b)(1)(B) | Adequate protection liens, adequate protection superiority claims, monitoring of the Prepetition Secured Notes Collateral, maintenance of the Prepetition Secured Notes Collateral, reporting covenants, and other covenants. | Interim Order, ¶ 3(a)-(b) |
| **Liens on Avoidance Actions**<br><br>Complex Case Procedures ¶ C(8)(d) | The Interim Order does not provide for liens on avoidance actions; however, subject to entry of a Final Order, the Secured Noteholders may be granted liens on the proceeds of avoidance actions. | Interim Order, ¶ 3(a) |

7

4906-4106-5362

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| **Carve Out**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B) | (i)  the payment of unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the delivery of a Carve Out Trigger Notice);<br><br>(ii)  all unpaid reasonable and documented fees, costs, and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the delivery of a Carve Out Trigger Notice);<br><br>(iii)  to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, costs, and expenses, provided that payment of any such fees, costs, and expenses shall be subject to final allowance by the Court in accordance with any interim compensation procedures that may be established by the Court in these chapter 11 cases (the "***Allowed Professional Fees***") incurred or earned by persons or firms retained or proposed to be retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code, and the Committee (if any) pursuant to sections 328 or 1103 of the Bankruptcy Code at any time on or before the first business day following the date of delivery by the Required Secured Noteholders in accordance of the terms of the Interim Order, of a Carve Out Trigger Notice and without regard to whether such fees, costs, or expenses are included or provided for in any Approved Budget or were invoiced on or allowed after the Carve Out Trigger Notice Date;<br><br>(iv)  Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by the Required Secured Noteholders of the Carve Out Trigger Notice in accordance of the terms of the Interim Order, to the extent allowed at any time, | Interim Order, ¶ 5(a) |

8

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| | whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Debtor Professional and not previously returned or applied to its respective fees and expenses; and | |
| | (v) Allowed Professional Fees of Committee Professionals in an aggregate amount not to exceed $25,000 incurred after the first business day following delivery by the Required Secured Noteholders in accordance of the terms of the Interim Order, of the Carve Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any retainers received by any such Committee Professional and not previously returned or applied to its respective fees and expenses. | |
| **Waiver or Modification of the Automatic Stay**<br><br>Complex Case Procedures ¶ C(8)(e) | The Interim Order provides that:<br><br>(i) the automatic stay will be modified to the extent necessary to permit the Secured Noteholders to perform any act authorized or permitted under or by virtue of the Interim Order, including, without limitation, to take any act to create, validate, evidence, attach or perfect the Adequate Protection Liens and to receive any payments expressly authorized by this Interim Order with respect to the Prepetition Secured Notes Debt or adequate protection; and<br><br>(ii) unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Secured Noteholders, shall automatically be terminated at the conclusion of both the Remedies Notice Period and a Termination Event Hearing without further notice or order. | Interim Order, ¶¶ 4, 7(b) |

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| **Section 506(c) Waiver**<br><br>Complex Case Procedures ¶ C(8)(e) | Subject to and effective upon entry of the Final Order, subject to the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Secured Notes Collateral or the Adequate Protection Collateral, or the Secured Noteholders pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Noteholders. | Interim Order, ¶ 19 |
| **Section 552(b)(1) Waiver**<br><br>Complex Case Procedures ¶ C(8)(e) | Subject to the entry of the Final Order, the Secured Noteholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Secured Noteholders with respect to proceeds, products, offspring, or profits of any of the Prepetition Secured Notes Collateral or the Adequate Protection Collateral. | Interim Order, ¶ 21 |
| **Release, Waivers, or Limitation on any Claim or Cause of Action**<br><br>Complex Case Procedures ¶ C(8)(f) | The Debtors will release Secured Noteholders from broad liabilities relating to the Secured Notes, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Debt, the Secured Notes Documents, or the Interim Order, as applicable and / or the transactions contemplated under any of the above. | Interim Order, ¶ 11 |

| Default Provisions and Remedies that are Self-Executing or Preclude Court Oversight<br><br>Complex Case Procedures ¶ C(8)(e) | (i) The Debtors' authorization to use Cash Collateral on a consensual basis pursuant to the Interim Order shall automatically terminate on such date (the "***Termination Date***") that is the earliest of (i) the effective date of any chapter 11 plan with respect to the Debtors that is confirmed by the Court; and (ii) unless otherwise ordered by the Court, five (5) business days from the date (the "***Termination Declaration Date***") on which written notice of the occurrence of any Termination Event is given (which notice may be given by email or other electronic means) by the Required Secured Noteholders or the Majority Secured Noteholder Advisors to the Debtors' counsel, counsel to the Committee (if appointed), and the U.S. Trustee (the "***Termination Declaration***" and such period commencing on the Termination Declaration Date and ending five (5) business days later, which period shall be automatically extended if the Debtors or the U.S. Trustee seek an emergency hearing as provided in clause (b) prior to the expiration of such period to enable the Court to rule thereon, the "***Remedies Notice Period***"); *provided*, that until the expiration of the Remedies Notice Period, the Debtors may (a) continue to use Cash Collateral to make payments in respect of expenses necessary to keep the business of the Debtors operating in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, (c) pay professional fees and fund the Professional Fee Reserve Account in accordance with paragraph 5 of the Interim Order, and (d) seek other relief as provided for in paragraph 7 of the Interim Order.<br><br>(ii) If a Termination Declaration is delivered, the Debtors, the Committee (if appointed), and the Secured Noteholders hereby consent to an emergency hearing being held before the Court on an expedited basis (a "***Termination Event Hearing***"), and related motions shall be filed with the Court on at least three (3) business days' notice (subject to the Court's availability) for the sole purpose (unless the Court orders | Interim Order, ¶¶ 7(a)-(b) |

| Provision and Applicable Bankruptcy Rule | Material Terms | Location |
|---|---|---|
| | otherwise) of considering whether a Termination Event has occurred or is continuing or for the contested use of Cash Collateral.  Unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Secured Noteholders, shall automatically be terminated at the conclusion of both the Remedies Notice Period and a Termination Event Hearing without further notice or order. Upon expiration of the Remedies Notice Period and following the conclusions of a Termination Event Hearing, unless the Court orders otherwise, each of the Secured Noteholders shall be permitted to exercise all remedies set forth herein and in the Secured Notes Documents, and as otherwise available at law or in equity without further order of or application or motion to this Court. | |

## **PREPETITION INDEBTEDNESS**[4]

12.     As of the Petition Date, the Debtors collectively have outstanding funded debt obligations that are secured by collateral in the aggregate principal amount of approximately $10.0 million, plus accrued and unpaid interest, fees, premiums (including prepayment premiums), expenses, disbursements, indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due,

---

[4]     The following is a summary only and is qualified in its entirety by reference to the Secured Notes Documents. To the extent there are any inconsistencies between this summary and the Secured Notes Documents, the Secured Notes Documents shall control.

4906-4106-5362

owing, chargeable, or reimbursable under the Secured Notes Documents incurred in connection therewith as provided in the Secured Notes Documents, summarized in the following chart:

| Facility | Maturity | Total Approx. Principal Amount Outstanding[5] |
|---|---|---|
| Senior Secured Convertible Notes | September 2025 | $10.0 million |
| **Total Secured Funded Debt** | | $10.0 million |

### DEBTORS' IMMEDIATE NEED FOR ACCESS TO CASH COLLATERAL

13.    The Debtors require immediate access to liquidity to ensure that they are able to fund employee payroll, administrative expenses, and preserve the value of their estates for the benefit of all parties in interest.  All of the Debtors' cash on hand as of the Petition Date, approximately $2.3 million, is subject to the liens of the Secured Noteholders and thus constitutes Cash Collateral.  The Debtors' use of Cash Collateral pursuant to the terms of the Interim Order is the Debtors' best and only option to preserve the value of their assets while pursuing a marketing and sale process pursuant to section 363 of the Bankruptcy Code and continuing to explore options for postpetition financing.

14.    Absent authority to use Cash Collateral, even for a limited period of time, the Debtors' business would suffer, causing immediate and irreparable harm to the Debtors, their respective estates, their employees, and their creditors.  Accordingly, the use of Cash Collateral is critical to preserve and maintain the value of the Debtors' estates.

### PREPETITION NEGOTIATIONS

15.    Leading up to the Petition Date, the Debtors and their advisors worked closely with the Secured Noteholders and the Majority Secured Noteholder Advisors to reach agreement on the

---

[5]    Includes estimated accrued interest through the Petition Date.

4906-4106-5362

Interim Order, which will govern the use and disbursement of Cash Collateral during these chapter 11 cases.  Those negotiations resulted in an agreement allowing the Debtors to use the Secured Noteholders' Cash Collateral on a consensual basis, subject to certain conditions, including an agreed-upon budget.

## **DEBTORS' PROPOSED USE OF CASH COLLATERAL**

16.    Initially, the Debtors seek authority to use Cash Collateral until the Final Order has been entered by the Court (the "***Interim Period***").  During this Interim Period, the Debtors will fund employee payroll, other ordinary course payments, and the costs of administering their estates in accordance with the Initial Approved Budget (as defined in the Interim Order), which is annexed to the Interim Order as Exhibit 1, subject to Permitted Variances (as defined below), and in accordance with the Budget Provisions (as defined in the Interim Order).  Thereafter, the Debtors will seek authority to use Cash Collateral in accordance with the Final Order, a proposed form of which will submitted to the Court before the Final Hearing on this Motion.

17.    In accordance with the negotiated terms reached with the Secured Notes Agent, the Debtors have agreed to use Cash Collateral in accordance with the Initial Approved Budget and any subsequent Approved Budget (as defined in the Interim Order) (subject to Permitted Variances and in accordance with the Budget Provisions set forth in the Interim Order).  The Initial Approved Budget includes reasonable and foreseeable expenses to be incurred by the Debtors for the applicable period, and is designed to provide the Debtors with adequate liquidity over such period.

18.    The Initial Approved Budget reflects, on a line-item basis, the Debtors' (i) weekly projected disbursements and (ii) the sources and uses of cash necessary for ongoing operations on a weekly basis for the applicable period.  The Debtors are required to expend Cash Collateral and proceeds thereof in accordance with the purposes, and in the time periods, set forth in the Initial Approved Budget, subject to permitted variations ("***Permitted Variance***").  However, all unpaid

14

fees and expenses (the "***Allowed Professional Fees***") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code and the Committee (as defined in the Interim Order) (to the extent one is appointed) pursuant to section 328 or 1103 of the Bankruptcy Code shall be due, payable, and paid in accordance with the terms of the Interim Order, notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Initial Approved Budget, and the Debtors shall not be deemed to have breached the terms of the Initial Approved Budget to the extent the actual amount of such fees, costs, and expenses exceed the applicable budgeted amounts as set forth in the Initial Approved Budget.

19.     The Debtors will file and serve the Initial Approved Budget on the Petition Date and, upon any request from a party in interest in these chapter 11 cases, will provide a copy of the Initial Approved Budget in native file format.   Thereafter, if further interim financing relief is needed prior to the entry of the Final Order, then beginning on the fifth Thursday following the Petition Date, and each Thursday four weeks thereafter, the Debtors will provide an updated rolling 13-week cash flow forecast of the Debtors in the form of the Initial Approved Budget (each, a "***Proposed Budget***"), which Proposed Budget, upon affirmative consent by the Required Secured Noteholders, [6] shall become the new Approved Budget.   In addition, the Required Secured Noteholders will be deemed to have approved any subsequent Proposed Budget unless the Required Secured Noteholders have objected to such Proposed Budget within five (5) business days after delivery of same.

---

[6]   "***Required Secured Noteholders***" shall mean the Secured Noteholders that collectively beneficially own or control more than 51% of Prepetition Secured Notes Debt held by the Secured Noteholders.

## BASIS FOR RELIEF REQUESTED

### A.    The Debtors Should Be Authorized to Use Cash Collateral

20.      The Debtors require use of the Cash Collateral for working capital and to fund their chapter 11 cases.   Section 363(c)[7] of the Bankruptcy Code governs a debtor's use of a secured creditor's cash collateral.

21.    Section 363(c) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363].

11 U.S.C. § 363(c)(2).

22.    A bankruptcy court should, whenever possible, resolve issues in ways that allow a debtor to continue its business as a going concern.  *See In re Powerwave Techs. Inc.*, No. 13-10134 (MFW), 2010 WL 11814289, at *4 (Bankr. D. Del. 2010) ("[A]n immediate and critical need exists for [debtors] to use Cash Collateral to continue operations and to administer and preserve the value of its estate.").  "To preserve the going concern value of its operations, the Debtor must be able to pay its expenses."  *In re Wythe Berry Fee Owner LLC*, 2023 Bankr. LEXIS 645, *19 (Bankr. S.D.N.Y. 2023).  Accordingly, courts have recognized that "[t]he ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors' efforts to maximize the value of their assets."  *In re NexPak Corp.*, 2009 Bankr. LEXIS 5025, *7 (Bankr. D. Del. 2009); see *In re Noble Int'l, Ltd.*, 2009 Bankr. LEXIS 5126, *2 (Bankr. E.D. Mich. 2009) (finding the

---

[7]     Section 363(a) of the Bankruptcy Code defines "cash collateral" as follows:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

debtors "need[ed] to use cash collateral to continue their efforts to maximize value by completing their asset sales").

**B.      Interests of the Secured Noteholders are Adequately Protected**

23.      Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Further, section 362(d)(1) provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See* 11 U.S.C. § 362(d)(1).

24.      The Bankruptcy Code does not expressly define "adequate protection."  Section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate protection, such as granting replacement liens and administrative claims, but courts ultimately decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) (*citing In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *In re Mathis*, 64 B.R. 279, 284 (N.D. Tex. 1986); *In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380, 1397 (5th Cir. 1986), aff'd, 484 U.S. 365 (1988); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

25.      In exchange for the Debtors' use of Cash Collateral pursuant to the Interim Order, the Debtors have agreed to provide adequate protection to the Secured Noteholders, including in the form of (i) Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined in the Interim Order) (in each case, solely to the extent of any diminution in value of the Prepetition Secured Notes Collateral), (iii) monitoring of the Prepetition Secured Notes Collateral, (iv) maintenance of the Prepetition Secured Notes Collateral, (v) certain reporting obligations, and (vi) other covenants, all as set forth in the Interim Order.  In order to adequately protect the Secured

4906-4106-5362

Noteholders against the diminution of value of their collateral, the Adequate Protection Liens include replacement liens on encumbered property and unencumbered property, if any. The Debtors believe that such provision is reasonable in light of the fact that through the use of cash, there will almost certainly be diminution in value, and granting a replacement lien on unencumbered property, if any, will protect the Secured Noteholders' interests.

26.     Courts in this district and others have approved similar adequate protection packages in recent chapter 11 cases. *See, e.g.*, *In re Shannon Wind, LLC*, No. 26-90124 (ARP) (Feb. 18, 2026) (Bankr. S.D. Tex.) (approving adequate protection in the form of, among other things, replacement liens on prepetition collateral, superpriority administrative claims pursuant to section 507(b), and other protections); *In re Luminar Tech., Inc.*, No. 25-90807 (CML) (Jan. 29, 2026) (Bankr. S.D. Tex.) (same); *In re Tedder Industries, LLC*, No. 25-90805 (CML) (Jan. 9, 2026) (Bankr. S.D. Tex.) (same); *In re LifeScan Global Corp.*, No. 25-90259 (ARP) (Aug. 18, 2025) (Bankr. S.D. Tex.) (same); *In re Wolfspeed, Inc.*, No. 25-90163 (CML) (Aug. 1, 2025) (Bankr. S.D. Tex.) (same). Similar relief is appropriate here.

27.     The Debtors believe that the proposed adequate protection package has been carefully designed to satisfy the dual goals of providing protections to the Secured Noteholders while permitting the Debtors to use Cash Collateral to preserve their estates, administer the Chapter 11 Cases, and run a value-maximizing marketing and sale process. Accordingly, the Debtors submit that the Court should determine that the adequate protection package is fair and reasonable, necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and in the best interests of the Debtors and their estates.

**C.     Carve Out is Appropriate**

28.     In consenting to the use of Cash Collateral, the Secured Notes Agent has agreed that the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be

4906-4106-5362

subject and subordinate to certain fees and expenses, including (a) fees owing to the Clerk of the Court and the U.S. Trustee incurred in connection with the Debtors' cases; (b) all reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code; (c) professional fees and expenses incurred on and after the Petition Date and before the occurrence of a Carve Out Trigger Notice Date (as defined in the Interim Order); (d) Allowed Professional Fees of Debtor Professionals incurred after the occurrence of a Carve Out Trigger Notice Date, in an amount not to exceed $200,000, and (e) Allowed Professional Fees of Committee Professionals incurred after the occurrence of a Carve Out Trigger Notice Date, in an amount not to exceed $25,000 (collectively, the "***Carve Out***").  *See* Interim Order, ¶ 5(a).

29.     The Carve Out is similar to other similar arrangements made for professional fees that have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from counsel.  *See In re Ames Dep't Stores Inc*., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *see also In re Las Torres Dev., L.L.C.*, 413 B.R. at 694 (noting that a carve out "is often incorporated into a cash collateral order agreed to by the debtor and the secured lender"); *In re Lil' Things, Inc.*, 243 B.R. 278, 280 (N.D. Tex. 2000) (referencing bankruptcy court order acknowledging that carve outs for attorneys' fees are "a normal and enforceable provision in a cash collateral stipulation").

30.     Without the Carve Out, the Debtors' estates and other parties in interest may be deprived of possible rights and powers because all of the Debtors' assets would be subject to prior security interests.  *See In re Ames Dep't Stores Inc.*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve Out

also protects against the possibility of administrative insolvency by ensuring that assets remain available for the payment of statutory and professional fees.

**D.      The Automatic Stay Should Be Modified to a Limited Extent**

31.      The relief requested herein contemplates a modification of the automatic stay, after notice and a hearing, to permit the Debtors and each of the Secured Noteholders to perform the transactions and actions contemplated or permitted by the Final Order.

32.      Stay modifications of this kind are typically approved by courts when requested in connection with a debtor's request to use Cash Collateral.  *See, e.g.*, *In re Shannon Wind, LLC*, No. 26-90124 (ARP) (Feb. 18, 2026) (Bankr. S.D. Tex.) (approving provision modifying automatic stay in connection with debtors' use of cash collateral); *In re Luminar Tech., Inc.*, No. 25-90807 (CML) (Jan. 29, 2026) (Bankr. S.D. Tex.) (same); *In re LifeScan Global Corp.*, No. 25-90259 (ARP) (Aug. 18, 2025) (Bankr. S.D. Tex.) (same); *In re Wolfspeed, Inc.*, No. 25-90163 (CML) (Aug. 1, 2025) (Bankr. S.D. Tex.) (same).

33.      Here, the stay relief provisions are a reasonable exercise of the Debtors' business judgment, are appropriate under the present circumstances, and, accordingly, should be approved.

**E.      Interim Relief Should Be Granted**

34.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen days after the service of such motion.  Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2).  Furthermore, the Complex Case Procedures provide that "[o]n motion by the debtors, a hearing (the "Initial Financing Hearing") will routinely be conducted as a first-day hearing to consider . . . cash collateral use[.]"  *Complex Case Procedures*, ¶ C.5.

4906-4106-5362

35.      In evaluating requests for interim relief, courts generally apply the same business judgment standard applicable to other business decisions.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40.  Courts in this district routinely authorize debtors to use cash collateral on an interim basis to prevent immediate and irreparable harm to their estates.  *See, e.g.*, *In re Shannon Wind, LLC*, No. 26-90124 (ARP) (Jan. 28, 2026) (Bankr. S.D. Tex.) (approving adequate protection in the form of, among other things, replacement liens on prepetition collateral, superpriority administrative claims pursuant to section 507(b), and other protections); *In re Luminar Tech., Inc.*, No. 25-90807 (CML) (Dec. 16, 2026) (Bankr. S.D. Tex.) (same); *In re Tedder Industries, LLC*, No. 25-90805 (CML) (Dec. 15, 2026) (Bankr. S.D. Tex.) (same); *In re LifeScan Global Corp.*, No. 25-90259 (ARP) (July 16, 2025) (Bankr. S.D. Tex.) (same); *In re Wolfspeed, Inc.*, No. 25-90163 (CML) (July 1, 2025) (Bankr. S.D. Tex.) (same).

36.      Here, the Debtors and their estates will suffer immediate and irreparable harm if the relief requested herein is not granted on an interim basis.  The Debtors have insufficient cash to fund their operations and administer these cases without access to Cash Collateral during the Interim Period.  Accordingly, the Court should grant the relief requested herein on an interim basis.

**F.      The Court Should Schedule a Final Hearing**

37.      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule a hearing to consider entry of the Final Order no later than 45 days after the Petition Date. As set forth in the Interim Order, if the Final Order is not entered within 45 days of the Petition Date, the Required Secured Noteholders will have the right to terminate the Debtors' use of Cash Collateral, which will result in irreparable harm for the Debtors and their stakeholders as set forth above.

38.      The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the

4906-4106-5362

notice parties listed below and that such notice of the Final Hearing be deemed sufficient under Bankruptcy Rule 4001(b)(3). The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(b)(2).

<div align="center">

**REQUEST FOR IMMEDIATE RELIEF**

</div>

39.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For the reasons discussed herein and in the First Day Declaration, (a) authorizing the debtors to use cash collateral, (b) granting adequate protection, (c) modifying the automatic stay, and (d) scheduling a final hearing, as well as granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors. Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would inhibit the Debtors' ability to preserve and maximize the value of their estates. As such, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses while maximizing the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

<div align="center">

**WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

</div>

40.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

<div align="center">

**RESERVATION OF RIGHTS**

</div>

41.     Nothing contained in this Motion shall constitute, nor is it intended to constitute, (a) an implication or admission as to the validity, priority, enforceability, or perfection of any

<div align="center">

22

</div>

claim, lien, security interest in, or other encumbrance against the Debtors and the property of their estates, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any proposed order, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## NOTICE

42.     Notice of this Motion has been provided by delivery to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (f) the Secured Noteholders; and (g) counsel to the Majority Secured Noteholder.  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

28.     No prior motion for the relief requested herein has been made to this Court or any other court.

## **PRAYER**

The Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated: March 8, 2026
Houston, Texas

<div style="margin-left: 40%;">

/s/  Matthew D. Struble

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Abigail R. Emery (TX 24133039)
845 Texas Avenue, Suite 4700
Houston, TX 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
         aemery@velaw.com

-and-

Matthew D. Struble (TX 24102544)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716
Email: mstruble@velaw.com

-and-

George R. Howard (*pro hac vice* pending)
Emily C. Jungwirth (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: ghoward@velaw.com
         ejungwirth@velaw.com

***Proposed Counsel to the Debtors and Debtors in Possession***

</div>

24

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made in accordance with Bankruptcy Local Rule 9013-1(i).

_/s/ Matthew D. Struble_
One of Counsel


## CERTIFICATE OF SERVICE

I certify that on March 8, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Matthew D. Struble_
One of Counsel

4906-4106-5362

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90393 (CML)** |
| | § | |
| **VIRIDIS CHEMICAL, LLC, _et al._,** | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Joint Administration Requested)** |
| | § | |
| | § | **Re: Dkt. No. ___** |

## INTERIM ORDER
## (I) AUTHORIZING THE DEBTORS TO USE
## CASH COLLATERAL, (II) GRANTING ADEQUATE
## PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
## (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") and pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1, 4001-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "***Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***") seeking entry of this interim order (together with all annexes and exhibits hereto, this "***Interim Order***"), including, among other things:

(i)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  4582 Kingwood Drive, Suite E #152, Kingwood, Texas 77345.

[2]    Capitalized terms used but not immediately defined herein shall have the meanings set forth in the Motion or elsewhere in this Interim Order, as applicable.

363(a) of the Bankruptcy Code, and all other Prepetition Secured Notes Collateral (as defined below), solely in accordance with the terms of this Interim Order and (ii) grant adequate protection to the Secured Noteholders (as defined below) as set forth herein;

(ii)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iii)   subject to the entry of the Final Order (as defined below), except to the extent of the Carve Out (as defined below), the waiver of all rights to surcharge any Prepetition Secured Notes Collateral or Adequate Protection Collateral (as defined below) under section 506(c) of the Bankruptcy Code;

(iv)   subject to the entry of the Final Order, for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to any of the Secured Noteholders with respect to the proceeds, products, offspring, or profits of any of the Prepetition Secured Notes Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(v)    that this Court schedule a final hearing (the "***Final Hearing***") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "***Final Order***");

(vi)   waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(vii)  granting related relief;

and a hearing (the "***Interim Hearing***") having been held by the Court on March 9, 2026, to consider the relief requested in the Motion on an interim basis; pursuant to Bankruptcy Rule 4001 and Local Rule 2002-1, notice of the Motion and the relief sought therein having been given by the Debtors as set forth in the Motion; and the Court having considered the *Declaration of Patrick D. Killian in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 5] (the "***First Day Declaration***"), the *Declaration of Paul M. Henson, Jr. in Support of Emergency Motion for Entry of Interim And Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. [●]] (the "***Henson Declaration***"), the initial

2

4919-0977-7298

Approved Budget (as defined herein) attached hereto as **Exhibit 1** (the "***Initial Approved Budget***"), offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and the Court having considered the relief requested in the Motion, and it appearing to the Court that granting the interim relief sought in the Motion on the terms and conditions herein contained is necessary and essential to avoid irreparable harm to the Debtors and their estates and that authorizing the Debtors to use Cash Collateral as contemplated herein will enable the Debtors to preserve the value of the Debtors' business and assets and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtors and their estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      **Petition Date**.  On March 8, 2026 (the "***Petition Date***"), the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division  (the "***Court***").

B.      **Debtors in Possession**.   The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      **Jurisdiction and Venue**.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District*

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4919-0977-7298

*Court for the Southern District of Texas*, dated May 24, 2012.   Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This Court may enter a final order consistent with Article III of the United States Constitution.

**D.      Notice**.   The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and paragraph C of the Complex Case Procedures.   Proper, timely, adequate, and sufficient notice of the Interim Hearing and the interim relief requested in the Motion has been provided under the circumstances in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures, and no other or further notice of the Motion or entry of this Interim Order shall be required.   The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and stakeholders.

**E.      Committee Formation**.   As of the date hereof, the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee subsequently appointed, the "***Committee***").

**F.      Cash Collateral**.   As used herein, the term "***Cash Collateral***" shall mean all of the Debtors' cash, including cash and other amounts on deposit or maintained in any bank accounts subject to Prepetition Secured Notes Liens (as defined below) that constitutes or will constitute "cash collateral" of the Secured Noteholders within the meaning of section 363(a) of the Bankruptcy Code.

**G.      Debtors' Stipulations.**   Subject to the limitations contained in paragraph 14 hereof, the Debtors admit, stipulate, and agree to the following (collectively, the "***Debtors' Stipulations***"):

4

1.    *Secured Notes*

(i)    Secured Notes Documents.    Pursuant to that certain Note Purchase
Agreement (the "***Note Purchase Agreement***") for the senior secured convertible promissory notes
(collectively, the "***Secured Notes***"), dated as of August 8, 2023 (collectively with any other
agreements and documents executed or delivered in connection therewith, each as may be
amended, restated, amended and restated, supplemented, waived, or otherwise modified from time
to time prior to the Petition Date, the "***Secured Notes Documents***") by and among Viridis
Chemical, LLC ("***Viridis***"), as issuer, Viridis Chemical NE Asset Co 1, LLC and Viridis Chemical
NE Asset Co 2, LLC, as subsidiary guarantors (together with Viridis, the "***Secured Notes***
***Parties***"), EIV Viridis Chemical, LLC and a minority investor, as purchaser parties thereto, (in
such capacities, the "***Secured Noteholders***"),[4] and EIV Viridis Chemical, LLC, as the collateral
agent (the "***Secured Notes Agent***"), Viridis issued the Secured Notes to the Secured Noteholders
under the Secured Notes Documents.  The Secured Notes are secured by security interests and/or
liens on substantially all of the assets of the Secured Notes Parties, in each case as described more
fully in the Secured Notes Documents.

(ii)    Prepetition Secured Notes Debt.  As of the Petition Date, the Secured Notes
Parties were, as applicable, justly and lawfully indebted and liable to the Secured Noteholders
without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate
principal amount of not less than $10,000,000 pursuant to, and in accordance with the terms of,
the Secured Notes Documents, plus accrued and unpaid interest, fees, premiums (including
prepayment premiums), expenses, disbursements, indemnification obligations, and other charges,

---

[4]    EIV Viridis Chemical, LLC is the majority Secured Noteholder (in such capacity, the "***Majority Secured***
***Noteholder***").

amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Secured Notes Documents incurred in connection therewith as provided in the Secured Notes Documents (collectively, the "***Prepetition Secured Notes Debt***").

(iii)     Prepetition Secured Notes Liens.  As more fully set forth in the Secured Notes Documents, prior to the Petition Date, the Secured Notes Parties granted to the Secured Noteholders a first-priority (subject to permitted liens) security interest in, and continuing lien on, substantially all of the Debtors' assets, including: (i) Cash Collateral (the "***Cash Collateral Liens***") and (ii) all of the Debtors' other assets, other than Cash Collateral, described in  the Secured Notes Documents and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "***Asset Liens***"), together with the Cash Collateral Liens, the "***Prepetition Secured Notes Liens*** "). The Prepetition Secured Notes Liens extend to all Collateral (as defined in the Secured Notes Documents) (the "***Prepetition Secured Notes Collateral***").

2.     ***Validity, Perfection, and Priority of the Prepetition Secured Notes Liens and the Prepetition Secured Notes Debt.***

(i)     The Debtors acknowledge and agree that, in each case as of the Petition Date: (a) the Asset Liens are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Secured Noteholders for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the commitments and other financial accommodations secured thereby; (b) the Asset Liens are senior in priority over any and all other liens on the Prepetition Secured Notes Collateral, subject only to Permitted Liens (as defined in the Note Purchase Agreement) (solely to the extent any such Permitted Liens were valid, properly

4919-0977-7298

perfected, non-avoidable, not subject to recharacterization, offset, or subordination, and senior in priority to the Prepetition Secured Notes Liens as of the Petition Date, or valid, non-avoidable, senior priority Permitted Liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "***Prepetition Permitted Liens***"); (c) the Cash Collateral Liens are valid, binding, enforceable, and non-avoidable, and were granted to, or for the benefit of, the Secured Noteholders for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the commitments and other financial accommodations secured thereby; (d) the Cash Collateral Liens are senior in priority over any and all other liens on the Prepetition Secured Notes Collateral, subject only to the Prepetition Permitted Liens; (e) the Prepetition Secured Notes Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtors; (f) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Notes Liens or Prepetition Secured Notes Debt exist, and no portion of the Prepetition Secured Notes Liens or Prepetition Secured Notes Debt is subject to any challenge or defense, including attachment (where applicable), avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, or subordination (whether equitable or otherwise), pursuant to the Bankruptcy Code or applicable non-bankruptcy law (foreign or domestic); and (g) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code, or applicable state law, against the Secured Noteholders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees in such capacity arising out of, based upon, or related to the Secured Notes Documents, the Prepetition Secured Notes Debt, or the Prepetition Secured Notes Liens.

(ii)     The Debtors may continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Secured Notes Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Secured Notes Documents) constitute Prepetition Secured Notes Collateral subject to the applicable Prepetition Secured Notes Liens. Certain balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts also constitute Cash Collateral that is subject to the Prepetition Secured Notes Liens.

**H.     Findings Regarding the Use of Cash Collateral and Adequate Protection**.

(i)     This Court concludes that good and sufficient cause has been shown for entry of this Interim Order and entry of this Interim Order is in the best interests of the Debtors' respective estates as its implementation will, among other things, allow the Debtors to maximize the value of their estates through a continuation of their prepetition sale process.  Without receiving the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.

(ii)     <u>Cash Collateral</u>.  Substantially all of the Debtors' cash constitutes Cash Collateral, including amounts generated by the collection of Prepetition Secured Notes Collateral, including but not limited to accounts receivable, cash proceeds of the Prepetition Secured Notes Collateral, and amounts now or hereafter held in any of the Debtors' banking, checking, or other deposit accounts as of the Petition Date or amounts deposited or transferred into the Debtors' banking, checking, or deposit accounts after the Petition Date.

(iii)     <u>Immediate Need to Use Cash Collateral</u>.  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate and critical need to obtain use of the Prepetition Secured Notes Collateral, including the Cash Collateral in

order to, among other things, fund payroll, working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred during these Chapter 11 Cases. Access to liquidity through the use of the Cash Collateral, consistent with the Approved Budget and the Budget Provisions through the date of the Final Hearing, is vital to the Debtors and their efforts to maximize the value of their estates. Absent entry of this Interim Order, the Debtors' estates and creditors, including the Secured Noteholders, will be immediately and irreparably harmed.

(iv)     <u>Adequate Protection</u>. Pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, the Secured Noteholders are entitled, as a condition to the use of their Prepetition Secured Notes Collateral, to adequate protection of their respective interests in the Prepetition Secured Notes Collateral, including the Cash Collateral, to the extent of any postpetition diminution in value of their respective interests in the Prepetition Secured Notes Collateral resulting from, among other things, the Carve Out, the use of Cash Collateral, the use, sale, or lease of any of the Prepetition Secured Notes Collateral, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or for any other reason for which adequate protection may be granted under the Bankruptcy Code ("***Diminution in Value***"). The foregoing shall not, nor shall any provision of this Interim Order be construed as, a determination or finding that there has been or will be any Diminution in Value of the Prepetition Secured Notes Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

(v)     Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Prepetition Secured Notes Collateral, including Cash Collateral, are fair and

4919-0977-7298

reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

      **I.**     **Bank Accounts**.  The Debtors acknowledge and agree that, as of the Petition Date, the Debtors do not maintain any bank accounts other than those accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system.

      **J.**     **Notice**.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 2002-1, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors to the Notice Parties (as defined in the Motion) as set forth therein.  Under the circumstances, the notice given by the Debtors of (and as described in) the Motion, the relief requested herein, and the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 2002-1.

      **K.**     **Consent by Secured Noteholders**.  The Secured Noteholder Agent, on behalf of the Secured Noteholders, has consented to the Debtors' use of Cash Collateral in accordance with and subject to the terms and conditions provided for in this Interim Order.

      **L.**     **Permitted Liens; Continuation of Prepetition Secured Notes Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the Secured Noteholders, and the Committee, if any, in each case to the extent any such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Lien and is expressly subject

4919-0977-7298

to the Prepetition Secured Notes Liens.  The respective Prepetition Secured Notes Liens of each of the Secured Noteholders are continuing liens and the respective Prepetition Secured Notes Collateral of each such Secured Noteholder is and will continue to be encumbered by such liens in light of the integrated nature of the respective Secured Notes Documents applicable to each such Secured Noteholder.

      **M.**    **Relief Essential; Best Interest**.  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the administration of the Chapter 11 Cases, and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.  The terms of the Interim Order and the use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties.

      **N.**    **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Permitting the use of Cash Collateral in accordance with this Interim Order is therefore necessary, essential, and appropriate for the management and preservation of, and in the best interests of, the Debtors' estates and is consistent with the Debtors' exercise of their fiduciary duties.  Sufficient cause therefore exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Motion Approved and Objections Overruled.* The Motion is granted on an interim basis as set forth herein, the incurrence and granting of the Adequate Protection Obligations is authorized, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, settled, or resolved and all reservations of rights included therein, are hereby denied and overruled in all respects.

2. *Authorization to Use Cash Collateral; Budget.*

(a) <u>Authorization</u>. Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the Debtors' consensual use of Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined below), in each case, solely and exclusively in a manner consistent with and not in violation of this Interim Order, the Approved Budget, and the budget related provisions set forth in this paragraph 2 (collectively, the "***Budget Provisions***").

(b) <u>Approved Budget; Budget Period</u>. As used in this Interim Order: (i) "***Approved Budget***" means the Initial Approved Budget, as such Initial Approved Budget may be modified, supplemented, or extended from time to time by the Debtors; and (ii) "***Budget Period***" means the initial two-week period set forth in the Approved Budget, and each rolling two-week period thereafter.

(c) <u>Budget Testing</u>. The Debtors may use Cash Collateral on a consensual basis in accordance with the Approved Budget, subject to Permitted Variances (as defined below), and

12

in accordance with the Budget Provisions.  Permitted Variances for each Budget Period shall be tested on a rolling two-week basis beginning on the second Sunday following the Petition Date and on every Sunday thereafter (each such date, a "*Testing Date*").  On or before 5:00 p.m. (prevailing Central time) on the third Thursday following the Petition Date and every Thursday thereafter, the Debtors shall prepare and deliver to each of the Secured Noteholders, and the Majority Secured Noteholder Advisors (as defined below), in form satisfactory to the Secured Noteholders that collectively beneficially own or control more than 51% of Prepetition Secured Notes Debt held by the Secured Noteholders (the "*Required Secured Noteholders*"), including certain Secured Noteholders represented by Haynes and Boone, LLP, as counsel, (the "*Majority Secured Noteholder Advisors*"), a variance report (the "*Variance Report*") setting forth for the Budget Period just ended: (i) the Debtors' actual disbursements, including Restructuring Professional Fees (as defined below) (the "*Actual Disbursements*") on a line-by-line and aggregate basis (including and excluding Restructuring Professional Fees); (ii) a cumulative comparison (whether positive or negative, in dollars and expressed as a percentage) covering the Budget Period setting forth the Actual Disbursements (and each line item thereof) against the amount of the Debtors' projected disbursements (and each line item thereof), respectively, as set forth in the Approved Budget for such Budget Period; and (iii) as to each variance contained in the Variance Report, an indication as to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any variance.

(d)     <u>Permitted Variances</u>.  The Debtors shall not permit during any Budget Period the Actual Disbursements to be more than 115% of the projected disbursements in the aggregate for such Budget Period; *provided*, that for the avoidance of doubt, the cash disbursements considered for determining compliance with this covenant shall exclude the

Debtors' disbursements in respect of restructuring professional fees of Professional Persons (as defined below), and any professional fee payments to other creditors or creditor groups (such excluded cash disbursements, the "***Restructuring Professional Fees***"; such deviations, the "***Permitted Variances***"); *provided further*, that amounts budgeted for any line item in the Approved Budget that are not expended within a Budget Period may be carried forward and utilized in the subsequent Budget Period with respect to such line item.

        (e)    <u>Proposed Budget Reporting</u>.  By no later than 5:00 p.m. (prevailing Central time) on the fifth Thursday following the Petition Date and on each Thursday four-weeks thereafter, the Debtors shall deliver to the Majority Secured Noteholder Advisors a rolling 13-week cash flow forecast of the Debtors in the form of the Initial Approved Budget (each, a "***Proposed Budget***").  Any Proposed Budget (including any subsequent revisions, modifications, or supplements to any such Proposed Budget) shall become the Approved Budget only upon the affirmative consent of the Required Secured Noteholders (the "***Approval Deadline***"); provided, that the Required Secured Noteholders shall be deemed to have approved any subsequent Proposed Budget unless the Required Secured Noteholders have objected to such Proposed Budget within five (5) business days after delivery of same.  In the event the Required Secured Noteholders object to the most recently delivered Proposed Budget prior to the Approval Deadline, the prior Approved Budget shall remain in full force and effect.  When required under the terms of this Interim Order, the consent or approval of the Required Secured Noteholders) may be communicated via email to the Debtors or their professionals by the Majority Secured Noteholder Advisors.

        3.    *Adequate Protection of Secured Noteholders.*  Subject only to the Carve Out and the terms of this Interim Order, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection

of the interests of the Secured Noteholders in the Prepetition Secured Notes Collateral (including Cash Collateral), in each case solely for and to the extent of the Diminution in Value, the Secured Noteholders are hereby granted the following as adequate protection (the "***Adequate Protection Obligations***"):

(a)    Adequate Protection Liens.    Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, and subject in all cases to the Carve Out, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control by the Secured Notes Agent or any other party, the Debtors are authorized to grant, and hereby are deemed to have granted, to the Secured Noteholders, valid, binding, continuing, enforceable, fully perfected, nonavoidable, first-priority senior (but subject to the Prepetition Permitted Liens and the Carve Out), additional, and replacement security interests in and liens on (all such liens and security interests, the "***Adequate Protection Liens***"): (i) the Prepetition Secured Notes Collateral; and (ii) all of the Debtors' now-owned and hereafter-acquired real and personal property, assets and rights, including all prepetition property and postpetition property of the Debtors of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, any unencumbered assets of the Debtors, if any, and all prepetition property and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable,

other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all commercial tort claims, and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and any and all proceeds, products, rents, and profits of the foregoing (all property identified in this paragraph being collectively referred to as the "*Adequate Protection Collateral*"), subject only to the Prepetition Permitted Liens and the Carve Out. Notwithstanding the foregoing, the Adequate Protection Collateral shall exclude the Professional Fee Reserve Account (other than with respect to the residual interest therein as provided in paragraph 5(h) hereof) and all claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code (other than claims and causes of action arising under section 549 of the Bankruptcy Code) (the "*Avoidance Actions*"), but, subject to entry of a Final Order, shall include any and all proceeds of and other property that is recovered or becomes unencumbered as a result of (whether by judgment, settlement, or otherwise) any Avoidance Action (the "*Avoidance Proceeds*").

(b)     Adequate Protection Superpriority Claims.  As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtors are authorized to grant, and hereby are deemed to have granted effective as of the Petition Date, to each of the Secured Noteholders and Secured Notes Agent, as applicable, allowed superpriority administrative expense claims in the Chapter 11 Cases ahead of and senior to any and all other administrative expense claims in the Chapter 11 Cases to the extent of any Diminution in Value (the "*Adequate Protection Superpriority Claims*"), subject  only to the Carve Out.  Subject to the

16

Carve Out, the Adequate Protection Superpriority Claims shall not be junior to or pari passu with any other administrative expense claims against the Debtors and shall have priority over all now or hereinafter incurred administrative expense claims against the Debtors, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code; *provided*, that any recovery from or against Avoidance Proceeds shall be subject to entry of a Final Order.

(c)     <u>Monitoring of Collateral</u>.  The Secured Noteholders and their advisors shall be given reasonable access to the Debtors' books, records, assets, and properties for purposes of monitoring the Debtors' businesses and the value of the Prepetition Secured Notes Collateral.

(d)     <u>Maintenance of Collateral</u>.  The Debtors shall comply with the covenants contained in the Secured Notes Documents regarding the maintenance and insurance of the Prepetition Secured Notes Collateral, except as otherwise provided herein.

(e)     <u>Reporting Requirements</u>.  As additional adequate protection to the Secured Noteholders for the consensual use of Cash Collateral, the Debtors shall provide, subject to any applicable limitations set forth in this Interim Order, to the Secured Noteholders and the Majority Secured Noteholder Advisors:  (1) at time specified in paragraph 2(c) hereof, the Variance Report required by paragraph 2(c) hereof; (2) timely delivery of each Proposed Budget as set forth in this Interim Order;  and  (3) upon written request (including via email) by the Majority Secured Noteholder Advisors, the Debtors will provide the Secured Noteholders and the Majority Secured Noteholder Advisors with reasonable access to any consultant, financial advisory firm, or investment banking firm retained by the Debtors in the Chapter 11 Cases.

17

(f)     <u>Other Covenants</u>.   The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' Cash Management Motion (as defined in the Motion).

(g)     <u>Right to Seek Additional Adequate Protection</u>.   This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Secured Noteholders to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

4.     *Perfection of Adequate Protection Liens.*   The liens and security interests granted hereunder shall be deemed valid, automatically perfected as of the Petition Date, and allowed without the necessity of recording same and without further notice or order.   The Adequate Protection Liens shall be valid and enforceable against each Debtor and its estate in accordance with the terms of this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "***Successor Cases***").   The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified to the extent necessary to permit the Secured Noteholders to perform any act authorized or permitted under or by virtue of this Interim Order, including, without limitation, to take any act to create, validate, evidence, attach or perfect the Adequate Protection Liens and to receive any payments expressly authorized by this Interim Order with respect to the Prepetition Secured Notes Debt or adequate protection; *provided* that the Secured Noteholders shall not be required to file any UCC financing statements or other instruments (or to take any other action) to perfect the Adequate Protection Liens.

4919-0977-7298

5.     *Carve Out.*

(a)     Notwithstanding anything to the contrary in this Interim Order or the Secured Notes Documents, each of the Prepetition Secured Notes Liens, the Adequate Protection Liens, the Prepetition Secured Notes Debt, and the Adequate Protection Superpriority Claims (and any other claims arising under section 507(b) of the Bankruptcy Code), and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (i) the payment of unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the delivery of a Carve Out Trigger Notice (as defined below)); (ii) all unpaid reasonable and documented fees, costs, and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the delivery of a Carve Out Trigger Notice); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, costs, and expenses, provided that payment of any such fees, costs, and expenses shall be subject to final allowance by the Court in accordance with any interim compensation procedures that may be established by the Court in these Chapter 11 Cases (the "***Allowed Professional Fees***") incurred or earned by persons or firms retained or proposed to be retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (collectively, the "***Debtor Professionals***"), and the Committee (if any) pursuant to sections 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***") at any time on or before the first business day following the date of delivery by the Required Secured Noteholders in accordance of the terms hereof, of a Carve Out Trigger Notice (defined below) and without regard to whether such fees, costs, or expenses are included or provided for in any

19

Approved Budget or were invoiced on or allowed after the Carve Out Trigger Notice Date (the amounts set forth in this clause (iii) being the "***Pre Carve Out Trigger Notice Cap***"); (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by the Required Secured Noteholders of the Carve Out Trigger Notice in accordance of the terms hereof, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Debtor Professional and not previously returned or applied to its respective fees and expenses (the amount set forth in this clause (iv) being the "***Debtor Post Carve Out Trigger Notice Cap***"); and (v) Allowed Professional Fees of Committee Professionals in an aggregate amount not to exceed $25,000 incurred after the first business day following delivery by the Required Secured Noteholders in accordance of the terms hereof, of the Carve Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any retainers received by any such Committee Professional and not previously returned or applied to its respective fees and expenses (the amount set forth in this clause (v), together with the Debtor Post Carve Out Trigger Notice Cap, such amount, the "***Post Carve Out Trigger Notice Cap***" and the Pre Carve Out Trigger Notice Cap together with the Post Carve Out Trigger Notice Cap and the amounts set forth in clauses (i) and (ii), the "***Carve Out Cap***") (the foregoing clauses (i) through (v), collectively, the "***Carve Out***").  The term "***Carve Out Trigger Notice***" shall mean a written notice stating that the Post Carve Out Trigger Notice Cap has been invoked, delivered by email by the Required Secured Noteholders or the Majority Secured Noteholder Advisors to the Debtors' restructuring counsel (Vinson & Elkins, LLP), the U.S. Trustee, and counsel to the Committee (if any), which notice may only be delivered following the occurrence and during the continued existence of a Termination Event (as defined below) and the

termination of the Debtors' consensual use of Cash Collateral under this Interim Order.  The term "***Carve Out Trigger Notice Date***" shall mean the day on which a Carve Out Trigger Notice is delivered by the Required Secured Noteholders or the Majority Secured Noteholders Advisors. On the Carve Out Trigger Notice Date, the Carve Out Trigger Notice shall constitute a demand to the Debtors to transfer cash in an amount equal to the Carve Out Cap (which shall be determined by the applicable Professional Person in its reasonable discretion based on the amount of then unpaid Allowed Professional Fees plus a reasonable estimate of fees and expenses not yet allowed), less any amount then held in the Professional Fee Reserve Account (defined below) to the Professional Fee Reserve Account.

(b)     Immediately following receipt of a Carve Out Trigger Notice, and prior to the payment of the Secured Noteholders, or any other obligations or claims, the Debtors shall be required to deposit into the Professional Fee Reserve Account cash in an amount equal to the difference between the Carve Out Cap and the balance held in the Professional Fee Reserve Account as of the Carve Out Trigger Notice Date.   Notwithstanding anything to the contrary herein, in the Secured Notes Documents, or following delivery of a Carve Out Trigger Notice, the Secured Noteholders shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fee Reserve Account has been fully funded as permitted above in an amount equal to all applicable obligations benefitting from the Carve Out.  Any payment or reimbursement made to any Professional Person in respect of any Allowed Professional Fees prior to the delivery of the Carve Out Trigger Notice shall not reduce the Carve Out.

(c)     The Debtors shall use funds held in the Professional Fee Reserve Account to pay Professional Person fees as they become allowed and payable pursuant to interim or final

orders from the Court; provided that the Debtors' obligations to pay the allowed fees and expenses of the Professional Persons shall not be limited or deemed limited to funds held in the Professional Fee Reserve Account.  The amounts in the Professional Fee Reserve Account shall be available only to satisfy Allowed Professional Fees and other amounts included in the Carve Out until such amounts are paid in full.  Notwithstanding anything to the contrary herein, (i) the failure of the Professional Fee Reserve Account to satisfy in full the amount set forth in the Carve Out shall not affect the enforceability  of the Carve Out and (ii) in no way shall the Carve Out, the Carve out Cap, the Professional Fee Reserve Account, any Proposed Budget, any Approved Budget, the Estimated Professional Fees, the Incurred Debtor Professional Fees, or the Reserve Amounts be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).  All funds in the Professional Fee Reserve Account shall be used first to pay all obligations benefitting from the Pre Carve Out Trigger Notice Cap, until paid in full, and then the obligations benefitting from the Post Carve Out Trigger Notice Cap, and then, to the extent the Professional Fee Reserve Account has not been reduced to zero, any such excess shall be paid to the Secured Noteholders, unless the Prepetition Secured Notes Debt has been indefeasibly paid in full, in cash.  The amount in the Professional Fee Reserve Account shall be reduced on a dollar-for-dollar basis for Allowed Professional Fees that are paid after the delivery of the Carve Out Trigger Notice, and the Professional Fee Reserve Account shall not be replenished for such amounts so paid.

(d)     Payments from the Carve Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment and compensation of each Professional Person.

(e)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  The Secured Noteholders reserve the right to object to the allowance of any fees and expenses.  Except for permitting the funding of the Professional Fee Reserve Account as provided herein, none of the Secured Noteholders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Chapter 11 Cases or any Successor Case(s).  Nothing in this Interim Order or otherwise shall be construed to obligate the Secured Noteholders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Professional Fee Reserve Account</u>.  Upon entry of this Interim Order, and notwithstanding any other provision of this Interim Order or any provision of the other Secured Notes Documents, the Debtors are authorized and directed to fund an escrow account at Epiq Corporate Restructuring LLC for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (the "***Professional Fee Reserve Account***").  The escrow agreement for the Professional Fee Reserve Account is attached hereto as **<u>Exhibit 2</u>** (the "***Escrow Agreement***").  The Debtors are authorized to enter into and perform under the Escrow Agreement in accordance with its terms.  The Professional Fee Reserve Account shall be held for the benefit of Professional Persons and shall not be property of the Debtors' estates or subject to the control, lien, security interest, or claims of the Secured Noteholders, or any other creditor; *provided*, *however*, the Secured Noteholders shall have a security interest in any residual amounts in the Professional Fee Reserve Account.  Upon entry of this Interim Order, the Debtors shall fund the Professional Fee Reserve Account in an amount equal to (i) the Post Carve Out Trigger Notice Cap (and shall retain such amount in the Professional Fee Reserve Account for the duration of the Chapter 11 Cases);

plus (b) the total estimated fees and expenses for the Debtor Professionals (the "***Estimated Professional Fees***"), which good-faith estimate shall be provided to the Majority Secured Noteholders Advisors upon or prior to entry of this Interim Order and cover the time period beginning on the Petition Date through the second Saturday following the Petition Date.  By not later than 5:00 p.m. (prevailing Central Time) on Thursday of each week commencing with the first full calendar week following the Petition Date (each, an "***Estimation Period***"), each Debtor Professional shall deliver to the Majority Secured Noteholders Advisors a statement setting forth the Estimated Professional Fees for such Debtor Professional for the subsequent week.  Subject to clause (g) below, on a weekly basis, the Debtors shall transfer cash, including Cash Collateral, in an amount equal to the Estimated Professional Fees for the subsequent week (including, in the event of the closing of any sale, restructuring, financing, or other transaction upon which one or more success or transaction fees is earned by any Debtor Professional, any amount equal to the sum of all such fees, to the extent such fees are not paid to Debtor Professionals upon such closing).

(g)     Following the first Estimation Period (and on a weekly basis thereafter), and contemporaneously with the delivery of the updated Estimated Professional Fees, counsel for the Debtors shall deliver to the Majority Secured Noteholders Advisors a report of actual fees incurred by the Debtor Professionals for the immediately prior Estimation Period (the "***Incurred Debtor Professional Fees***").  To the extent there is a positive or negative variance between the Estimated Professional Fees and the Incurred Debtor Professional Fees for a particular Estimation Period, the Debtors shall adjust the subsequent Estimated Professional Fees in an amount equal to any such variance.  For the avoidance of doubt, the Required Secured Noteholders shall have notice of, but the Secured Noteholders shall not have a consent right over each notice of Estimated Professional Fees.

(h)    Amounts in the Professional Fee Reserve Account (such amounts, the "***Reserve Amounts***") may be applied from time to time to pay the Allowed Professional Fees prior to any and all other claims; provided, however, that notwithstanding the foregoing, any payment of Allowed Professional Fees prior to the delivery of a Carve Out Trigger Notice shall not reduce the Carve Out Cap.  If, after payment in full of all Reserve Amounts on account of Allowed Professional Fees and termination of the engagement of all Professional Persons, the Professional Fee Reserve Account has not been reduced to zero, all residual  funds shall be returned to the Secured Noteholders for application to any remaining outstanding amounts owing on the Prepetition Secured Notes Debt.  To the extent all of the Prepetition Secured Notes Debt has been paid in full, in cash, then any remaining funds shall be returned to the Debtors for distribution in accordance with a further order of this Court.  Upon return of cash held in the Professional Fee Reserve Account to the Debtors, at any time, such cash shall automatically constitute Adequate Protection Collateral and shall be subject to the Adequate Protection Liens.  For the avoidance of doubt, the Debtors' obligation to pay Allowed Professional Fees shall not be limited or deemed limited to funds held in the Professional Fee Reserve Account or the Approved Budget.

6.    *Termination*.  Subject to the Remedies Notice Period (as defined below) and paragraphs 5 and 7 of this Interim Order, including if ordered by the Court in accordance with paragraph 7, the Debtors' right to consensual use of Cash Collateral pursuant to this Interim Order shall automatically cease without further Court proceedings on the Termination Date.  As used herein, "***Termination Event***" means any of the following, in each case, unless waived or modified with the consent of the Secured Noteholders:

(a)     a Final Order acceptable to the Debtors and the Required Secured Noteholders is not entered by the Court by 11:59 p.m. (prevailing Central Time) on the date that is 45 days after the Petition Date;

(b)     the violation of any material term of this Interim Order by the Debtors that is not cured within three (3) business days of receipt by the Debtors of written notice of such default from the Required Secured Noteholders;

(c)     without the prior written consent of the Required Secured Noteholders, a motion seeking authorization and approval of proposed bidding and auction procedures, in form and substance reasonably acceptable to the Required Secured Noteholders, is not filed by the Debtors by the date that is three (3) days after the Petition Date;

(d)     without the prior written consent of the Required Secured Noteholders, an order approving the bidding and auction procedures, in form and substance reasonably acceptable to the Required Secured Noteholders, is not entered by the Court on the date that is twenty-five (25) days after the Petition Date;

(e)     entry of an order modifying, reversing, revoking, staying for a period in excess of five (5) business days, rescinding, vacating, or amending this Interim Order in a manner adverse to the rights, interest, priorities, or entitlements of the Secured Noteholders without the express prior written consent of the Required Secured Noteholders;

(f)     without the prior written consent of the Required Secured Noteholders, the Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code; a trustee under chapter 11 of the Bankruptcy Code, an examiner with expanded powers, or a responsible officer or similar person is appointed in the Chapter 11 Cases; the Chapter 11 Cases are transferred or there is a change of venue; the Debtors file any motion, pleading, or proceeding

26

(or solicit, support, or encourage any other party to file any motion, pleading, or proceeding) seeking or consenting to the granting of any of the foregoing relief; or any order is entered granted any of the foregoing relief;

      (g)    except for the Carve Out and Prepetition Permitted Liens, or as otherwise expressly permitted in advance and in writing by the Required Secured Noteholders, the voluntary creation of any lien or other interest pari passu with or senior to any of the Prepetition Secured Notes Liens, Adequate Protection Liens, or Adequate Protection Superpriority Claims granted to the Secured Noteholders under this Interim Order;

      (h)    without the prior written consent of the Required Secured Noteholders, the Debtors file any motion, pleading, or proceeding (or solicit, support, or encourage any other party to file any motion, pleading, or proceeding) seeking or consenting to an order granting: (i) the invalidation, subordination, or other challenge to the Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims, (ii) any relief under sections 506(c) or 552 of the Bankruptcy Code with respect to any Prepetition Secured Notes Collateral or any Adequate Protection Collateral, including the Cash Collateral, or against any of the Secured Noteholders, in each case other than the Carve Out, or (iii) the commencement of any actions by the Debtors that are materially adverse to any of the Secured Noteholders or their respective rights and remedies under the Secured Notes Documents in the Chapter 11 Cases.;

      (i)    without the prior written consent of the Required Secured Noteholders, the Court shall terminate the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

27

(j)     the entry of an order granting relief from the automatic stay so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any Prepetition Secured Notes Collateral with a value in excess of $200,000;

(k)     the payment of any prepetition claims that are junior in interest or right to the Prepetition Secured Notes Liens, other than as permitted by an order entered in the Chapter 11 Cases;

(l)     the entry of a subsequent order of the Court terminating the Debtors' use of Cash Collateral;

(m)     the failure by the Debtors to comply with the Budget Provisions set forth in paragraph 2 hereof (subject to the Permitted Variances); or

(n)     the entry of an order of this Court approving the terms of any senior secured or pari passu debtor in possession financing that is entered into by the Debtors without the written consent of the Required Secured Noteholders.

7.     *Remedies After Termination Date*.

(a)     Notwithstanding anything contained herein, the Debtors' authorization to use Cash Collateral on a consensual basis pursuant to this Interim Order shall automatically terminate on such date (the "***Termination Date***") that is the earliest of (i) the effective date of any chapter 11 plan with respect to the Debtors that is confirmed by the Court; and (ii) unless otherwise ordered by the Court, five (5) business days from the date (the "***Termination Declaration Date***") on which written notice of the occurrence of any Termination Event is given (which notice may be given by email or other electronic means) by the Required Secured Noteholders or the Majority Secured Noteholder Advisors to the Debtors' counsel, counsel to the Committee (if appointed), and the U.S. Trustee (the "***Termination Declaration***" and such period commencing on the

28

Termination Declaration Date and ending five (5) business days later, which period shall be automatically extended if the Debtors or the U.S. Trustee seek an emergency hearing as provided in clause (b) below prior to the expiration of such period to enable the Court to rule thereon, the "***Remedies Notice Period***"); *provided*, that until the expiration of the Remedies Notice Period, the Debtors may (a) continue to use Cash Collateral to make payments in respect of expenses necessary to keep the business of the Debtors operating in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, (c) pay professional fees and fund the Professional Fee Reserve Account in accordance with paragraph 5 of this Interim Order, and (d) seek other relief as provided for in this paragraph 7.

(b)      If a Termination Declaration is delivered as provided above, the Debtors, the Committee (if appointed), and the Secured Noteholders hereby consent to an emergency hearing being held before the Court on an expedited basis (a "***Termination Event Hearing***"), and related motions shall be filed with the Court on at least three (3) business days' notice (subject to the Court's availability) for the sole purpose (unless the Court orders otherwise) of considering whether a Termination Event has occurred or is continuing or for the contested use of Cash Collateral.  Unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Secured Noteholders, shall automatically be terminated at the conclusion of both the Remedies Notice Period and a Termination Event Hearing without further notice or order.  Upon expiration of the Remedies Notice Period and following the conclusions of a Termination Event Hearing, unless the Court orders otherwise, each of the Secured Noteholders shall be permitted to exercise all remedies set forth herein and in the Secured Notes Documents, and as otherwise available at law or in equity without further order of or application or motion to this Court.

(c)       For the avoidance of doubt, nothing in this Interim Order waives, limits, alters, or impairs the parties' rights to seek or object to the non-consensual use of Prepetition Secured Notes Collateral, Adequate Protection Collateral, or Cash Collateral after the occurrence of the Termination Declaration Date.  Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing to consider any relief related to the automatic stay under section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief.  The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority, or enforceability of any and all rights, remedies, benefits, and protections provided to any of the Secured Noteholders under this Interim Order, which rights, remedies, benefits, and protections shall survive the Termination Date or the delivery of Termination Declaration.

8.       *Modification of Automatic Stay*.  The Debtors are authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

9.       *Survival of Interim Order*.  The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken in reliance hereof shall survive entry of any order which may be entered converting the Chapter 11 Cases to chapter 7 cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise, confirming or consummating any plan(s) of reorganization or liquidation or otherwise, or approving or consummating any sale of any Prepetition Secured Notes Collateral or Adequate Protection

Collateral, whether pursuant to section 363 of the Bankruptcy Code or included as part of any plan. The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order, shall continue notwithstanding any conversion of the Chapter 11 Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Chapter 11 Cases, confirmation or consummation of any plan(s) of reorganization or liquidation, approval or consummation of any sale, or otherwise.

10.     *No Third-Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

11.     *Release*.  Subject to the rights, provisions, and limitations set forth in paragraph 14 of this Interim Order, effective upon entry of this Interim Order, the Debtors hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Secured Noteholders (each in their respective roles as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, agents, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date

hereof with respect to or relating to the Secured Notes, the Prepetition Secured Notes Liens, the Prepetition Secured Notes Debt, the Secured Notes Documents, or this Interim Order, as applicable, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the Prepetition Secured Notes Liens or prepetition claims of the Secured Noteholders.

12.    *Binding Effect*.  The terms of this Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors, and all other parties in interest from and after the entry of this Interim Order by this Court.

13.    *Reversal, Stay, Modification, or Vacatur*.  In the event the provisions of this Interim Order are hereinafter reversed, stayed, modified, or vacated, such reversal, modification, stay, or vacatur shall not affect the rights and priorities of the Secured Noteholders granted and in effect pursuant to this Interim Order immediately prior thereto.  In other words, notwithstanding any such reversal, stay, modification, or vacatur, any indebtedness, obligation, or liability incurred by the Debtors pursuant to this Interim Order arising prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order, including any payments made hereunder or security interests and liens granted herein.

14.    *Effect of Stipulations on Third Parties*.

(a)    The Debtors' Stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon the Debtors, their estates, their affiliates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner

32

appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' Stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, a Committee, if any, unless: (i) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period, the chapter 7 trustee in such Successor Case), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia,* in this paragraph) by no later than (A) the earlier of an order confirming a chapter 11 plan and 60 days after entry of this Interim Order, and (B) solely with respect to any Committee, the earlier of (i) 60 calendar days after the appointment of the Committee, (ii) if longer, 60 days from entry of this Interim Order, and (iii) the Bid Deadline (as defined in the Bid Procedures Order), and (C) any such later date as has been ordered by the Court or agreed to, in writing, by the Secured Noteholders (the time period established by the foregoing clauses (A) through (C), as the same may be extended as provided for herein, shall be referred to as the "***Challenge Period***," and termination of such Challenge Period, the "***Challenge Period Termination Date***"), *provided however*, that if, prior to the end of the Challenge Period, (i) the cases convert to chapter 7, or (ii) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of thirty (30) days solely with respect to any such trustee, (x) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of any of the Prepetition Secured Notes Debt or the Prepetition Secured Notes Liens or (y) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims (including recharacterization claims), counterclaims or causes

of action, objections, contests, or defenses (collectively, the "***Challenges***") against any of the Secured Noteholders or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "***Representative***" and, collectively, the "***Representatives***") in connection with matters related to the Secured Notes Documents, the Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, or the Prepetition Secured Notes Collateral; and (ii) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.

(b)     If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (i) the Debtors' Stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Committee (if any); (ii) the obligations of the applicable loan parties under the Secured Notes Documents including the Prepetition Secured Notes Debt, shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (iii) the Prepetition

Secured Notes Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected (only as to the Asset Liens), security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity; and (iv) the Prepetition Secured Notes Debt and the Prepetition Secured Notes Liens shall not be subject to any other or further claim or challenge by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against the Secured Noteholders and their Representatives arising out of or relating to any of the Secured Notes Documents, the Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, and the Prepetition Secured Notes Collateral shall be deemed forever waived, released, and barred.

(c)      If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the foregoing clause (b)) (i) in their entirety on any person or entity that did not file a timely Challenge and (ii) on any person or entity that did file a timely Challenge, except to the extent that (A) such stipulations, admissions, agreements, and releases were expressly challenged in such person or entity's timely filed Challenge (subject to rule 15(c) of the Federal Rules of Civil Procedure) and (B) such Challenge was upheld as set forth in a final, non-appealable order of a court of competent jurisdiction.

(d)      The Challenge Period may be extended only (i) with the prior written consent of the Debtors and the Required Secured Noteholders (email being sufficient), or (ii) by order of the Court for good cause shown.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, if any, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to Secured Notes Documents, the Prepetition Secured Notes Debt, or the Prepetition Secured Notes Liens. Further, nothing in this Interim Order limits the Secured Noteholders' rights under section 363(k) of the Bankruptcy Code with respect to the Secured Notes Documents, the Prepetition Secured Notes Debt, or the Prepetition Secured Notes Liens.

15.      *Limitation on Use of Collateral and Cash Collateral.*  Notwithstanding anything to the contrary set forth in this Interim Order, none of the Adequate Protection Collateral, the Prepetition Secured Notes Collateral, including Cash Collateral, or the Carve Out or proceeds of any of the foregoing may be used: (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the

36

initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (excluding any proceedings contemplated by paragraph 7 hereof) (i) against any of the Secured Noteholders (in their capacities as such) or any of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors in such capacity, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief against any of the Secured Noteholders or that that would otherwise impair the rights and remedies of the Secured Noteholders hereunder, under the Secured Notes Documents, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed (if any) in these Chapter 11 Cases in connection with the assertion of or joinder in any such claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the Secured Noteholders to recover on the Prepetition Secured Notes Collateral or the Adequate Protection Collateral or seeking affirmative relief against any of the Secured Noteholders related to the Prepetition Secured Notes Debt; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Notes Debt or the Secured Noteholders' Prepetition Secured Notes Liens or security interests in the Prepetition Secured Notes Collateral or the Adequate Protection Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against any of the Secured Noteholders, or with respect to the Secured Noteholders' respective liens on or security interests

in the Prepetition Secured Notes Collateral or the Adequate Protection Collateral that would impair the ability of any of the Secured Noteholders to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Notes Debt, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including, without limitation, the Prepetition Secured Notes Liens) held by or on behalf of each of the Secured Noteholders related to the Prepetition Secured Notes Debt; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to or in connection with the Prepetition Secured Notes Debt or the Prepetition Secured Notes Liens, including any cause of action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, or Adequate Protection Liens; (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Notes Liens or any other rights or interests of any of the Secured Noteholders related to the Prepetition Secured Notes Debt or the Prepetition Secured Notes Liens; or (e) for monetary, injunctive, or other affirmative relief against any of the Secured Noteholders relating in any way to the Prepetition Secured Notes Debt; *provided* that no more than $25,000 of the proceeds of the Adequate Protection Collateral, or the Prepetition Secured Notes Collateral, including the Cash Collateral, in the aggregate, may be used solely by any Committee appointed (if any) in these Chapter 11 Cases, if any, solely to investigate, prior to the Challenge Period Termination Date, any potential Challenge, including claims, causes of action, adversary proceedings, or other litigation against the Secured Noteholders solely concerning the legality, validity, priority,

perfection, enforceability, or extent of the Prepetition Secured Notes Debt and/or the Prepetition Secured Notes Liens.

16.     *Enforceability; Waiver of Any Applicable Stay*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062, 9014, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

17.     *No Waiver for Failure to Seek Relief*.  The failure or delay of any of the Secured Noteholders to seek relief or otherwise exercise any of their rights and remedies under this Interim Order, the Secured Notes Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Secured Noteholders.

18.     *Proofs of Claim*.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, if any, each of the Secured Noteholders shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Secured Notes Documents, Prepetition Secured Notes Debt, the Prepetition Secured Notes Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or prejudice or otherwise adversely affect the Secured Noteholders' rights,

39

remedies, powers, or privileges under any of the Secured Notes Documents, this Interim Order, or applicable law. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim on behalf of each of the Secured Noteholders with respect to the Prepetition Secured Notes Debt and all related obligations in these Chapter 11 Cases or any Successor Cases (as defined herein). The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

19. *Limitation on Charging Expenses Against Collateral*. Subject to and effective upon entry of the Final Order, subject to the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Secured Notes Collateral or the Adequate Protection Collateral, or the Secured Noteholders pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Noteholders. Neither the Required Secured Noteholders' consent to the Budget nor anything else herein shall be deemed or construed as agreement by the Secured Noteholders to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

20. *Cash and Cash Equivalents*. In the event the Debtors possess any cash or cash equivalents during the pendency of the Chapter 11 Cases that are not subject to the Prepetition Secured Notes Liens, such cash or cash equivalents shall be used and expended (or deemed to have been used or expended) by the Debtors prior to the use of any Cash Collateral.

21.  *Section 552(b) of the Bankruptcy Code*.  Subject to the entry of the Final Order, the Secured Noteholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Secured Noteholders with respect to proceeds, products, offspring, or profits of any of the Prepetition Secured Notes Collateral or the Adequate Protection Collateral.

22.  *No Marshaling*.  Subject to entry of the Final Order, the Secured Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Secured Notes Collateral or the Adequate Protection Collateral.

23.  *Headings*.  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

24.  *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

25.  *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

26.  *Interim Order Controls*.  In the event of any inconsistency between the terms and conditions of the Secured Notes Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

27.  *Retention of Jurisdiction*.  The Court shall retain exclusive jurisdiction to enforce this Interim Order and with respect to all matters arising from or related to the implementation of this Interim Order.

28.  *Final Hearing*.  The final hearing (the "***Final Hearing***") on the Motion shall be held on _____, 2026, at __:__ _.m., prevailing Central Time.  Any objections or responses to

entry of a final order on the Motion shall be filed on or before 5:00 p.m., prevailing Central Time,

on _____, 2026, and shall be served on:  (a) the Debtors, 4582 Kingwood Drive, Suite E #152,

Kingwood, Texas 77345, Attn:  Stephen Nunes; (b) proposed counsel to the Debtors, Vinson &

Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Matthew D. Struble;

(c) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street,

Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff (jayson.b.ruff@usdoj.gov) and Jana

Whitworth (jana.whitworth@usdoj.gov); (d) the official committee of unsecured creditors (if any)

appointed in these Chapter 11 Cases and their counsel; and (e) the Majority Secured Noteholders

Advisors, Haynes and Boone, LLP, 2801 N Harwood St. Suite 2300, Dallas, TX 75201, Attn: Ian

T. Peck and Jordan Chavez.


Dated: ___, 2026
Houston, Texas


_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

## **EXHIBIT 1**

**Initial Approved Budget**

**Viridis Chemical, LLC (Consolidated)**
**Budget**
**in $000's**

| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Week Ending | 3/13/26 | 3/20/26 | 3/27/26 | 4/3/26 | 4/10/26 | 4/17/26 | 4/24/26 |
| **Beginning Cash** | $2,300 | $2,064 | $1,559 | $1,284 | $1,003 | $748 | $557 |
| **Receipts** | | | | | | | |
| Interest Income | | | | $4 | | | |
| **Total Receipts** | | | | $4 | | | |
| **Disbursements** | | | | | | | |
| **Operating** | | | | | | | |
| Payroll | | | ($83) | | ($83) | | ($83) |
| Facility Support | | | ($6) | | | | ($6) |
| Software Service | | | | ($4) | | | ($4) |
| Professional Services | | | | ($6) | | | ($6) |
| Insurance | | ($26) | | ($2) | | | ($27) |
| Audit / Tax | | ($37) | | ($13) | | | |
| Employee Expense Reports / Other | ($4) | ($4) | ($4) | ($5) | ($8) | ($4) | ($4) |
| **Total Operating** | **($4)** | **($67)** | **($93)** | **($29)** | **($91)** | **($4)** | **($131)** |
| **Project Fountain** | | | | | | | |
| Pre-Customs Storage | | ($16) | | | ($16) | | |
| Site Cleanup for Due Diligence | | ($15) | | ($10) | | | |
| **Total Project Fountain** | | **($31)** | | **($11)** | **($16)** | | |
| **Debtor Restructuring Professionals** | **($232)** | **($122)** | **($172)** | **($184)** | **($122)** | **($177)** | **($252)** |
| **Other Bankruptcy Items** | | **($286)** | **($11)** | **($61)** | **($27)** | **($11)** | **($96)** |
| **Total Disbursements** | **($236)** | **($505)** | **($276)** | **($285)** | **($255)** | **($191)** | **($478)** |
| **Net Cash Flow** | **($236)** | **($505)** | **($276)** | **($281)** | **($255)** | **($191)** | **($478)** |
| **Ending Cash** | **$2,064** | **$1,559** | **$1,284** | **$1,003** | **$748** | **$557** | **$79** |

## **EXHIBIT 2**

**Escrow Agreement**

44

4919-0977-7298

*Filing Version*

## CARVE OUT ESCROW AGREEMENT

**THIS CARVE OUT ESCROW AGREEMENT** (this "**Agreement**") is made and entered into as of March [●], 2026, by and between Viridis Chemical, LLC, a Delaware limited liability company (the "**Company**") and Epiq Corporate Restructuring LLC, a New York limited liability company as agent (the "**Escrow Agent**," and together with the Company, the "**Parties**").

**WHEREAS**, the Company and certain of its debtor affiliates (collectively, the "**Debtors**") have each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on March 8, 2026.

**WHEREAS**, on March [●], 2026 the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**") entered that certain *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. [●]] (as may be amended, supplemented, or modified from time to time and/or replaced by a final order, the "**Cash Collateral Order**"), authorizing the Debtors' use of cash collateral, among other relief.[1]

**WHEREAS**, in furtherance thereof, and pursuant to the Cash Collateral Order, the Company has requested that the Escrow Agent establish, and the Escrow Agent has agreed to establish, on the terms and conditions set forth in this Agreement and the Cash Collateral Order, an escrow account for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (the "**Escrow Account**"), to be funded by the Company in accordance with this Agreement and the Cash Collateral Order, which shall be deposited into escrow to be held and distributed by the Escrow Agent in accordance with the terms of this Agreement and the Cash Collateral Order.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual and dependent covenants hereinafter set forth, the Parties agree as follows:

1.     **Escrow Agent**.  The Company hereby appoints the Escrow Agent as escrow agent for the purposes set forth herein and in the Cash Collateral Order, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein and in the Cash Collateral Order.

2.     **Funding of Deposit**.  Upon entry of the Cash Collateral Order, the Company shall deposit with the Escrow Agent, by wire transfer of immediately available funds per the wiring instructions contained in **Exhibit 1** affixed hereto, an amount equal to (a) the Post Carve-Out Trigger Notice Cap; *plus* (b) the total Estimated Professional Fees for the period beginning on the Petition Date through the second Saturday following the Petition Date (the "**Initial Deposit**"). Following the Initial Deposit, the Company shall deposit cash on hand with the Escrow Agent, by wire transfer of immediately available funds per the wiring instructions contained in **Exhibit 1**

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Cash Collateral Order.

affixed hereto, in the amounts and in the manner set forth in the Cash Collateral Order (each, a "**Subsequent Deposit**," and together with the Initial Deposit, the "**Deposit**"). The Escrow Agent shall not distribute or release the Deposit except in accordance with the terms and conditions of this Agreement, the Cash Collateral Order, or as otherwise ordered by the Court.

3. **Use of Deposit**.   The Deposit held in the Escrow Account pursuant to this Agreement will be maintained in trust for the benefit of the Professional Persons and shall not constitute property of the Debtors or the Debtors' estates or be subject to the control, lien, security interest, or claims of the Secured Noteholders, any other creditor of the Debtors, or any other person.  If there is a dispute regarding the Deposit between any of the Parties to this Agreement, the Professional Persons, or the Escrow Agent, any such party may submit the dispute to the Court as provided herein for resolution.  Notwithstanding anything herein to the contrary, the Deposit held in the Escrow Account shall not constitute property of the Debtors' estates within the meaning of 11 U.S.C. § 541.

4. **Release of Deposit**.  The Escrow Agent shall not release any portion of the Deposit, in whole or in part, from the Escrow Account except pursuant to a signed written instruction (a "**Direction Letter**") set forth in a PDF attached to an email from an authorized Professional Person set forth on **Schedule 1** affixed hereto (each such person, an "**Authorized Signatory**") authorizing release of such portion thereof to one or more Professional Person(s) in the amount(s) set forth therein to the account(s) specified therein.  Any such release of a portion of the Deposit shall be made solely in accordance with the Cash Collateral Orders and any compensation order(s) entered by the Court.  Upon receipt of a Direction Letter, the Escrow Agent shall promptly, and in any event within one (1) business day of its receipt of such Direction Letter, release the applicable portion of the Deposit by wire transfer to the account(s) designated in the Direction Letter.

5. **Reliance on Direction Letters**.  The Escrow Agent shall be entitled to conclusively rely upon any Direction Letter conforming to the requirements set forth in this Agreement, and shall have no responsibility to independently review the Cash Collateral Order, any underlying facts, circumstances, and/or occurrences, any supporting documentation thereto, and/or any final and non-appealable order from the Court to which such Direction Letter may refer, nor shall the Escrow Agent be required to interpret or draw legal conclusions with respect to a validly-authorized Direction Letter.  Upon receipt by the Escrow Agent of a validly-authorized Direction Letter, the Escrow Agent shall release the applicable portion of the Deposit as provided in Section 4 of this Agreement.

6. **Court Order**.  Notwithstanding any other provision in this Agreement to the contrary, this Agreement may be modified by a final and non-appealable order of the Court, and the Escrow Agent shall be bound by any such modifications; *provided* that, the Company may from time to time add, remove, or replace any Authorized Signatory to **Schedule 1** via signed written instruction to the Escrow Agent, without an order of the Court.

7. **Charges**.  For the services furnished by the Escrow Agent under this Agreement, the Escrow Agent shall be paid a flat fee of $5,000, which fee shall be due upon execution of this Agreement.  The Escrow Agent will add this charge to Epiq Corporate Restructuring LLC's regular monthly invoice for the month following execution.

2

8.      **Termination and Succession**.  This Agreement shall terminate upon termination of the engagement of all Professional Persons, or the Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving thirty (30) days' advance notice in writing of such resignation to the Company specifying a date when such resignation shall take effect.  Upon the termination of the engagement of all Professional Persons, or if the Company has failed to appoint a successor escrow agent prior to the expiration of forty-five (45) days following receipt of the notice of resignation, any remaining Deposit in escrow shall revert back to the Company in accordance with the Cash Collateral Order.  The Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to it, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by it in connection with the termination of the Agreement.

9.      **Indemnity**.  The Company agrees to indemnify and hold harmless the Escrow Agent from all losses, damages, claims, liabilities, penalties, judgments, settlements, actions, suits, proceedings, litigations, investigations, costs or expenses (including without limitation, reasonable out-of-pocket actual fees and expenses of outside counsel and experts and their staffs and all expenses of document location, duplication, and shipment) (collectively "**Losses**"), including without limitation Losses arising from (a) the negotiation, preparation, execution, and performance of this Agreement (or any subsequent amendment, restatement, supersedence, or other modification of this Agreement) or (b) its following any validly-authorized Direction Letters, in any case except those Losses resulting from the Escrow Agent's fraud, gross negligence, or willful misconduct.  In no event shall the Escrow Agent be liable for special, incidental, punitive, indirect, or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.  This Section 9 shall survive termination of this Agreement or the resignation, replacement, or removal of the Escrow Agent for any reason.

10.     **Notices**.  All notices and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by email of a PDF document if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective Parties at the addresses indicated below.  Notwithstanding the above, in the case of communications delivered to the Escrow Agent whereby the Escrow Agent must act based on a specified number of days upon its receipt of such communication, if applicable, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office.

If to the Company:      4582 Kingwood Drive, Suite E #152
                        Houston, Texas 77345
                        Attn:  Mark Barta
                               Stephen Nunes
                        Email: mark.barta@viridischemical.com
                               stephen.nunes@viridischemical.com

3

with copies to:

Carl Marks Advisors
900 Third Avenue, 10th Floor, Suite 1003
New York, NY 10022
Attn:   Mel Henson
        Ben Godbout
Email: mhenson@thecmagroup.com
        bgodbout@thecmagroup.com

-and-

Vinson & Elkins LLP
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Attn:  George R. Howard
Email: ghoward@velaw.com

-and-

Vinson & Elkins LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Attn: Matthew D. Struble
Email: mstruble@velaw.com

If to the Escrow Agent:       Epiq Corporate Restructuring, LLC
                              Attn:   Regina Amporfro
                              Email:  ramporfro@epiqglobal.com
                                      ViridisChemical@epiqglobal.com>

11.   **Governing Law; Submission to Jurisdiction.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas but giving effect to the Bankruptcy Code.  Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the Court, and each Party irrevocably submits to the exclusive jurisdiction of the Court in any such suit, action or proceeding.  Service of process, summons, notice, or other document by mail to such Party's address set forth herein shall be effective service of process for any suit, action, or other proceeding brought in the Court. The Parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action, or any proceeding in the Court and irrevocably waive and agree not to plead or claim in the Court that any such suit, action, or proceeding brought in the Court has been brought in an inconvenient forum. To the extent the Court fails to exercise jurisdiction, then each Party irrevocably submits to the jurisdiction of any federal or state court sitting in the State of Texas in and for Harris County or the United States District Court located in Houston, Texas.

4

4905-6274-9844

12.     **Waiver of Jury Trial**.  Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and, therefore, each such Party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

13.     **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

14.     **Force Majeure**.  Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out, or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing Party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

15.     **General**.  This Agreement constitutes the entire agreement and understanding of the Parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.  If any provision herein shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by the Parties.  All of the terms, agreements, covenants, representations, warranties, and conditions of this Agreement are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and permitted assigns.

16.     **Disbursement Documentation**.  Prior to or concurrently with the execution of this Agreement, the Company shall furnish the Escrow Agent with a copy of the Company's W-9 and any additional documentation required by the Escrow Agent for purposes of establishing the Escrow Account.  Notwithstanding anything to the contrary in <u>Section 4</u> of this Agreement and for the avoidance of doubt, the Escrow Agent shall not be required to comply with an otherwise validly authorized Direction Letter directing disbursement of funds to any third party recipient's account for which the Escrow Agent has not been furnished with required tax documentation (if any) for the recipient; *provided* that no such tax documentation will be required to authorize the return of any portion of the Deposit to the Company as provided for in this Agreement; *provided further* that such tax documentation, if otherwise required, may be affixed to such Direction Letter as an exhibit or transmitted concurrently therewith; *provided further* that the Escrow Agent shall, in advance of receipt of such Direction Letter, clarify upon request what documentation, if any, is required to effectuate the disbursements set forth in such Direction Letter.  If any required tax documentation has not been furnished to the Escrow Agent in connection with a Direction Letter, the Escrow Agent shall make a request for documentation and shall comply with the directions set forth therein upon receipt of such missing documents with no further action required by the submitting Escrow Parties.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on the date first written above.

<div align="right">

**Viridis Chemical, LLC**

By: _____

Name: Patrick Killian

Title:  Chief Executive Officer


**Epiq Corporate Restructuring, LLC**

By: _____

Name: Brad Tuttle

Title:  Senior Managing Director

</div>

[Signature Page to Escrow Agreement]

**Schedule 1**

**Authorized Signatories**

**Name(s), telephone number(s), and authorized signature(s) for members of Professional Persons designated to issue Direction Letters transmitting instructions and authorizing disbursements to the Escrow Agent:**

| Name | Telephone Number(s) | Signature[1] |
|---|---|---|
| George R. Howard | 1.212.237.0102 | |
| Matthew D. Struble | 1.214.220.7800 | _____ |
| Mel Henson | 1.704.724.3928 | _____ |
| Ben Godbout | 1.917.679.1861 | _____ |
| Brian Williams | 1.713.922.3784 | _____ |
| | | _____ |

---

[1] E-Signature is sufficient.

8

4905-6274-9844

Schedules to Escrow Agreement

**Exhibit 1**

**Escrow Account Information**

**[Omitted]**