IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 26-90393 (CML) |
| | § | |
| VIRIDIS CHEMICAL, LLC, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |

**DECLARATION OF
PAUL M. HENSON, JR., IN SUPPORT
OF EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, Paul Melvin Henson, Jr., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that:

1. I am a Managing Director for the CMA Group ("***CMA***"), a financial advisory and restructuring firm. I graduated from the University of Arkansas with a Bachelor of Science in Business Administration degree, and a major in accounting. I have approximately 15 years of experience in various restructuring situations, to include interim CFO, Financial Advisory and Assistant to the CFO positions, in addition to permanent financial leadership and CFO positions.

2. On the date hereof (the "***Petition Date***"), each of the above-captioned debtors (collectively, the "***Debtors***") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Court***").

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436). The location of the Debtors' corporate headquarters and the Debtors' service address is: 4582 Kingwood Drive, Suite E #152, Kingwood, Texas 77345.

4938-1869-3524

3. I am authorized to submit this Declaration in support of the relief requested in the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Cash Collateral Motion**"), filed contemporaneously herewith.[2] I am over 21 years of age, and, if called upon to testify, I would testify competently to the facts and opinions set forth herein. All facts and opinions set forth in this declaration (the "**Declaration**") are based upon my observations, knowledge and analysis, along with my review of books and records, information from relevant documents, and information supplied by or verified from other employees at CMA, the Debtors' management team, and the Debtors' other advisors during my Financial Advisory engagement with the Debtors. Unless otherwise indicated, any financial information contained in this Declaration is subject to change but is true and correct to the best of my knowledge as of the date of this Declaration. Such financial information is presented on a consolidated basis for the Debtors, except where specifically noted.

## IMMEDIATE NEED FOR ACCESS TO CASH COLLATERAL

4. Since CMA was retained in December 2025, I have become familiar with the Debtors' business and financial affairs and have worked closely with the Debtors' management to, among other things, review and advise on cash flow forecasts. These forecasts take into account disbursements anticipated by the Debtors' management, CMA and other Debtor professionals during the projected period and consider a number of factors, including, but not limited to, the effect anticipated by Debtors' management of the chapter 11 filing on the Company, professional

---

[2] The facts set forth in the Cash Collateral Motion and the *Declaration of Patrick D. Killian in Support of Chapter 11 Petitions and First Day Pleadings* filed contemporaneously herewith (the "**First Day Declaration**") are incorporated by reference herein. Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the First Day Declaration, the Cash Collateral Motion, or the Interim Order, as applicable.

fees, costs related to the Debtors' sale process, payroll costs, plant construction costs and other required operational payments.

5. Based on the Debtors' current cash balance, and the forecast and projection assumptions I reviewed and discussed with the Debtors, Debtor's Board, other members of CMA, my experience in restructuring and my familiarity with the Debtors, I believe the consensual use of Cash Collateral is necessary to fund employee payroll, other ordinary course payments, and the administrative costs of these Chapter 11 Cases, which will provide the means for the Debtors to execute their chapter 11 strategy—the continued pursuit of a third party investment or sale transaction. In addition, the Debtors will continue to explore options for postpetition financing.

6. As further detailed in the First Day Declaration, the Debtors commenced these Chapter 11 Cases to continue their prepetition marketing and sale process in an effort to maximize the value of their estates for the benefit of their stakeholders. Given the Debtors' declining liquidity position and inability to obtain additional financing from their existing lenders or third party investors at this time, the Debtors, their advisors, and the Debtors' board of managers determined that conducting a marketing of the Debtors' assets through a sale process under section 363 of the Bankruptcy Code would provide the best opportunity to maximize value for stakeholders under the circumstances.

7. Leading up to the Petition Date, the Debtors and their advisors worked closely with the Secured Notes Agent and the Majority Secured Noteholder Advisors to reach agreement on the Interim Order, which will govern the use and disbursement of Cash Collateral during these Chapter 11 Cases. Those negotiations resulted in an agreement allowing the Debtors to use the Secured Noteholders' Cash Collateral on a consensual basis, subject to certain conditions, including an agreed-upon budget.

8.      Access to Cash Collateral is essential to the Debtors' ability to continue their marketing and sale process in chapter 11 with the aim of effectuating a value-maximizing transaction.  All of the Debtors' cash is subject to the liens of the Secured Noteholders and thus constitutes Cash Collateral.  Based on the Debtors' Initial Approved Budget, I believe that the Debtors' continued access to this Cash Collateral is necessary to pay the administrative costs of these Chapter 11 Cases, preserve the value of the Debtors' estates, and facilitate a value-maximizing marketing and sale process.

9.      I believe an immediate and critical need exists for the Debtors to use Cash Collateral and, absent immediate authority to do so, even for a short period of time, the Debtors would face immediate and irreparable harm to their estates, their employees, and their creditors.

## ADEQUATE PROTECTION

10.     I am familiar with the terms of the Debtors' proposed use of Cash Collateral and the adequate protection proposed to be provided by the Debtors to the Secured Noteholders.  The proposed use of Cash Collateral is the product of arm's-length and good faith negotiations between the Debtors and the Secured Noteholders, and I believe is in the best interests of the Debtors, their estates, and their creditors.  The Secured Notes Agent, on behalf of the Secured Noteholders, has consented to the Debtors' use of Cash Collateral in accordance with the terms and conditions provided for in the Interim Order (and as will be incorporated in the Final Order).  Under the Interim Order, the Debtors will fund employee payroll, other ordinary course payments, and the costs of administering their estates in accordance with the Initial Approved Budget, subject to any Permitted Variances.  The Initial Approved Budget reflects, on a line-item basis, the Debtors' (i) weekly projected disbursements and (ii) the sources and uses of cash necessary for ongoing operations on a weekly basis for the applicable period.  The Initial Approved Budget includes

4938-1869-3524

reasonable and foreseeable expenses to be incurred by the Debtors for the applicable period, and is designed to provide the Debtors with liquidity over such period.

11. In exchange for the use of Cash Collateral and following extensive, good faith, arms' length negotiations, the Debtors intend to grant certain protections to the Secured Noteholders as set forth in more detail in the Cash Collateral Motion. The proposed adequate protection package provides the Secured Noteholders with a variety of safeguards to protect against any diminution in the value of the Prepetition Secured Notes Collateral (including Cash Collateral) during the Chapter 11 Cases. As described in detail in the Cash Collateral Motion and the proposed Interim Order, the Debtors propose to provide the Secured Noteholders with (i) fully perfected and non-avoidable replacement liens on all of the Debtors' now-owned or hereafter-acquired real and personal property, assets, and rights, (ii) allowed superpriority administrative expense claims in the Chapter 11 Cases ahead of and senior to any and all other administrative expense claims to the extent of any Diminution in Value, subject only to the Carve Out, (iii) monitoring of the Prepetition Secured Notes Collateral, (iv) maintenance of the Prepetition Secured Notes Collateral, (v) reporting covenants, and (vi) other covenants, all as set forth in the Interim Order and subject to the Court's approval. In order to protect the Secured Noteholders against the diminution of value of their collateral, the Adequate Protection Liens include replacement liens on encumbered property and unencumbered property, if any. I believe that such provision is reasonable in light of the fact that through the use of cash, there will almost certainly be diminution in value, and granting a replacement lien on unencumbered property, if any, will protect the Secured Noteholders' interests.

12. I believe that the terms and conditions on which the Debtors may use Cash Collateral (as further detailed in the Cash Collateral Motion and proposed Interim Order) have

been carefully designed to satisfy the dual goals of providing protections to the Secured Noteholders while permitting the Debtors to use Cash Collateral to preserve their estates, administer the Chapter 11 Cases, and run a value-maximizing marketing and sale process. Moreover, I understand that the Secured Notes Agent would only consent to the Debtors' use of Cash Collateral if the Interim Order included, among other things, the adequate protection obligations, modification of the automatic stay, and the other provisions of the proposed Interim Order. I believe having access to Cash Collateral as contemplated in the proposed Interim Order will allow the Debtors the best opportunity under the circumstances to maximize the value of their assets for the benefit of all stakeholders. At the same time, the Secured Noteholders will be protected in a manner to which they have agreed.

## **CONCLUSION**

13.  Based on the foregoing, I believe that (i) entry of the Interim and Final Orders is necessary to allow the Debtors to preserve and maximize the value of their estates and (ii) the relief requested in the Interim and Final Orders is in the best interests of the Debtors, their estates, and their stakeholders.

[*Remainder of page intentionally left blank.*]

4938-1869-3524

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2026

*/s/ Paul M. Henson, Jr.*
Paul M. Henson, Jr.

4938-1869-3524