IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 26-90393 (CML) |
| | § | |
| VIRIDIS CHEMICAL, LLC, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | |

MOTION OF DEBTORS FOR ENTRY
OF ORDERS (A) APPROVING (I) BIDDING PROCEDURES,
(II) CERTAIN BID PROTECTIONS IN CONNECTION WITH A
STALKING HORSE AGREEMENT, IF ANY, (III) FORM AND MANNER
OF NOTICE OF SALE, AUCTION, AND SALE HEARING, AND (IV) ASSUMPTION
AND ASSIGNMENT PROCEDURES; (B) SCHEDULING AUCTION, SALE HEARING,
AND RELATED DEADLINES; (C) APPROVING (I) SALE OF SUBSTANTIALLY ALL
OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, AND (II) ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file

this *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Certain Bid*

*Protections in Connection with a Stalking Horse Agreement, if any, (III) Form and Manner of*

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  4584 Kingwood Drive, Ste. E #152, Kingwood, Texas 77345.

Notice of Sale, Auction, and Sale Hearing, and (IV) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief (the "**Motion**") and in support respectfully submit the following:

## PRELIMINARY STATEMENT[2]

1.      As more fully discussed in the *Declaration of Patrick D. Killian in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 5] (the "**First Day Declaration**"), the Debtors commenced these chapter 11 cases with the aim of continuing the marketing and sale process they began prepetition as they seek to effectuate a sale of substantially all of their assets. Since commencement of the marketing process in February 2026, the Debtors' investment banker, Carl Marks Advisory Group LLC ("**CMA**") has contacted approximately 200 potential purchasers and held in-depth conversations with approximately twenty potential buyers, diligently working to both market the Debtors' assets and resolve any questions and concerns from potential buyers. CMA has facilitated the beginning of a diligence process that has so far included executing non-disclosure agreements with approximately fourteen parties, and CMA anticipates executing several more in the near term.  Additionally, the Debtors and their advisors continue to explore options for postpetition financing in order to ensure the Debtors have the runway and liquidity to run a robust sale process for the benefit of all stakeholders.

2.      A thorough yet expedited postpetition bidding process is necessary to the Debtors' efforts to maximize value for all stakeholders and is reasonable under the facts and circumstances

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the proposed Bidding Procedures Order or Bidding Procedures, as applicable.

of these chapter 11 cases.  The proposed Bidding Procedures provide the Debtors with appropriate flexibility to market and sell all, substantially all, or any portion of the Assets in an efficient and timely manner as described herein.

3.      Accordingly, the Debtors respectfully request that the Court enter the Bidding Procedures Order.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 105, 363(b) and (f), and 365 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 2002, 4002, 6003(a)(2), 6004, and 6006(d), rules 1075-1, 2002-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

7.      Viridis Chemical, LLC, together with its Debtor affiliates, is a privately-held, leading developer of bio-based, low-carbon chemical technology.  Through its proprietary Prairie Green™ catalytic process, Viridis produces ethyl acetate using only 100% corn-based ethanol. Viridis is in the process of relocating and reconstructing its ethyl acetate plant, originally located

in Columbus, Nebraska, to Peoria, Illinois.  The new Peoria site, situated on the Illinois River, offers key logistical advantages, including co-location of the plant with a high-purity alcohol plant, access to all major rail lines and barge-navigable routes connecting to the Mississippi River, and proximity to Viridis' core ethyl acetate customers in the Midwest and Northeast.

8.      On the date hereof (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

9.      Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the First Day Declaration and incorporated herein by reference.

## RELIEF REQUESTED

10.     By this Motion, the Debtors seek the following:

    a.      entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Bidding Procedures Order***"):

        i.      authorizing and approving the proposed bidding procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "***Bidding Procedures***"), in connection with one or more sale transactions (each, a "***Sale Transaction***") for any or all of the Assets;

        ii.     authorizing the Debtors to: (a) designate one or more stalking horse bidders (each, a "***Stalking Horse Bidder***") for all, substantially all, or any combination of the Assets, if any, (b) offer each such Stalking Horse Bidder certain bid protections (the "***Bid Protections***"), and (c) execute one or more stalking horse agreements (each, a "***Stalking Horse Agreement***") with any such Stalking Horse Bidder(s);

       iii.     scheduling: (a) an auction in connection with the Sale Transaction(s) (the "***Auction***"), (b) a hearing date in connection with the approval of the Sale Transaction(s) (the "***Sale Hearing***"), and (c) other deadlines with respect to the Sale Transaction(s);

       iv.     approving the form and manner of notice of the Sale Transaction(s), the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **<u>Exhibit 2</u>** (the "***Sale Notice***");

       v.     approving procedures (the "***Assumption and Assignment Procedures***") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction(s) (collectively, the "***Assigned Contracts and Leases***");

       vi.     approving the form and manner of notice to each relevant non-Debtor counterparty (each, a "***Contract/Lease Counterparty***") to an executory contract or unexpired lease regarding the Debtors' proposed assumption and assignment of the Assigned Contracts and Leases, including notice of proposed amounts necessary to cure any defaults thereunder (the "***Cure Costs***"), substantially in the form attached to the Bidding Procedures Order as **<u>Exhibit 3</u>** (the "***Assumption and Assignment Notice***");

   b.     entry of one or more orders (each a "***Sale Order***")[3] authorizing and approving the following:

       i.     the sale of any of the Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of such Assets;

       ii.     the assumption and assignment of the Assigned Contracts and Leases in connection with the Sale Transaction(s); and

   c.     related relief.

---

[3]    For the avoidance of doubt, the Debtors will file any proposed Sale Order(s) in advance of any Sale Hearing.

## THE PROPOSED SALE PROCESS

**A.     The Proposed Schedule**

11.     To ensure that the Debtors' sale and marketing process maximizes value for the benefit of the Debtors' estates, the Debtors seek approval of the following proposed schedule, which may be subject to modification in accordance with the Bidding Procedures:[4]

---

[4]     All proposed dates and deadlines set forth in this summary remain subject to Court approval.

| Date and Time | Event or Deadline |
|---|---|
| **April 15, 2026 at 5:00 p.m. (prevailing Central Time)** | **Indication of Interest Deadline**.<br><br>Deadline by which all non-binding Indications of Interest (as defined below) must be submitted to the Debtors by interested parties. |
| **April 20, 2026 at 5:00 p.m. (prevailing Central Time)** | **Stalking Horse Designation Deadline**. |
| **Within one business day following designation of a Stalking Horse Bidder (or as soon as reasonably practicable thereafter)** | **Notice of Stalking Horse (if any)**. |
| **April 27, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline**. |
| **April 29, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any)**.<br><br>The Auction will be held either (a) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, (b) virtually, or (c) at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **May 1, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s)**.<br><br>The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale/Assumption and Assignment Objection Deadline**.<br><br>Deadline by which parties must file any Sale Objection or Assumption and Assignment Objection, as each of those terms is defined in the Bidding Procedures. |
| **May 8, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** | **Sale Hearing**. |

12.     Given the Debtors' prepetition efforts to begin marketing their business prior to the Petition Date and the Debtors' limited liquidity, the Debtors submit that this proposed schedule balances the benefits of conducting a thorough marketing process to maximize value with the need to proceed expeditiously.  In addition to the Debtors' prepetition marketing efforts thus far, the Debtors will utilize the time prior to, and after, entry of the Bidding Procedures Order to actively market the Assets to expedite the solicitation of bids in advance of the deadline to submit bids (the "***Bid Deadline***").  In light of the foregoing, the Debtors have determined that the proposed schedule

is in the best interests of the Debtors' estates, provides interested parties with sufficient notice of and opportunity to participate in any Sale Transaction(s), and, ultimately, will result in the highest and best bid for the Assets under the circumstances.

**B.     The Bidding Procedures**

13.     The Bidding Procedures are designed to promote a fair, efficient, competitive, and robust sale process for the Assets.  If approved, the Bidding Procedures will allow the Debtors to expeditiously solicit and identify bids from potential buyers or investors that constitute the highest or otherwise best offer for any of the Assets, consistent with the Debtors' goal of maximizing value for their stakeholders.   In addition, the Bidding Procedures are designed to encourage all prospective bidders to put their best Bid forward and create a path towards a swift consummation of any Sale Transaction(s).

14.     To further increase the competitiveness of the marketing and sale process, the Debtors seek authority to select one or more parties to act as a Stalking Horse Bidder and to provide any such Stalking Horse Bidder(s) with Bid Protections in the form of the reimbursement of such bidder's reasonable, documented expenses and/or a break-up fee, as described in further detail below.  Having the flexibility to designate one or more Stalking Horse Bidders and offer Bid Protections will provide the Debtors with the ability to maximize the value of the Assets and encourage bidders to come forth quickly with committed purchase offers.  Given the Debtors' goal of maximizing value, the ability to designate Stalking Horse Bidders and offer Bid Protections to each such bidder is a reasonable and sound exercise of the Debtors' business judgment and will provide an actual benefit to the Debtors' estates.  However, to be clear, the Debtors ultimately may, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, not designate a Stalking Horse Bidder and/or offer Bid Protections at all.

15.     Generally, the Bidding Procedures attached to the Bidding Procedures Order establish, among other things:[5]

 a.  key dates and deadlines with respect to the sale process;

 b.  the requirements that Potential Bidders must satisfy to participate in the bidding process;

 c.  the means by which access to due diligence materials will be made available to Potential Bidders;

 d.  the deadlines and requirements for submitting Indications of Interest and Bids, as well as the method and criteria by which such Bids are deemed to be Qualified Bids sufficient to trigger the Auction and participate in the Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met, for any bidder to be considered a Qualified Bidder, which shall be determined by the Debtors in consultation with the Consultation Parties;

 e.  the manner in which Qualified Bids will be evaluated by the Debtors;

 f.  the conditions for having an Auction and procedures for conducting the Auction, if any;

 g.  the procedures by which the Debtors may designate a Stalking Horse Bidder, if any;

 h.  the criteria by which the Winning Bidder will be selected by the Debtors; and

 i.  various other matters relating to the sale process generally, including the designation of the Back-Up Bid, return of any good faith Deposits,[6] and certain reservations of rights.

---

[5] This summary of the Bidding Procedures is qualified in its entirety by the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

[6] Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures and/or any Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

**C.      Form and Manner of Sale Notice**

16.      The proposed Bid Deadline by which Bids must be actually received by the Debtors and their advisors is **April 27, 2026 at 5:00 p.m. (prevailing Central Time)**.

17.      The Debtors intend to conduct the Auction, if required, on **April 29, 2026 at 9:00 a.m. (prevailing Central Time)**, or such other time to be announced by the Debtors, in person or by videoconference or such other form of remote communication established by the Debtors.

18.      As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will cause the Sale Notice to be served (by email, if available, or otherwise, by first class mail) on the following parties or their respective counsel, if known: (a) the Notice Parties (as defined below) (b) the Contract/Lease Counterparties; (c) the United States Attorney's Office for the Southern District of Texas; (d) the state attorneys general for states in which the Debtors conduct business; (e) all parties asserting a security interest in the Assets to the extent reasonably known to the Debtors; (f) all parties who have previously expressed a written interest to the Debtors or their Advisors in potentially acquiring all or any of the Assets; and (g) all other known parties with any interest in the Assets; *provided* that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further*, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.

19.      The Debtors will also cause a form of the Sale Notice to be published once in *USA Today* or another publication with similar national circulation as soon as reasonably practicable

following entry of the Bidding Procedures Order and will post the Sale Notice on the Debtors' case information website located at https://dm.epiq11.com/ViridisChemical (the "***Case Website***"). Publication of the Sale Notice will provide notice to all interested parties whose identities are unknown to the Debtors.  The Sale Notice will include: (a) the date and time of the Bid Deadline, (b) the date, time, and place of the Auction and the Sale Hearing, and (c) the deadline for filing any objections related to any Sale Transaction(s).

20.     The Debtors respectfully submit that the Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of any proposed Sale Transaction(s) and the Sale Hearing and an opportunity to respond accordingly.

**D.     Summary of the Assumption and Assignment Procedures**

21.     The Debtors seek approval of the Assumption and Assignment Procedures to facilitate the fair and orderly assumption and assignment of the executory contracts and unexpired leases (collectively, the "***Potential Assigned Contracts and Leases***" and each, a "***Potential Assigned Contract or Lease***") in connection with any Sale Transaction(s).  Generally, the Assumption and Assignment Procedures are designed to, among other things, (a) outline the process by which the Debtors would serve notice to all counterparties (the "***Contract/Lease Counterparties***") to the Potential Assigned Contracts and Leases regarding (i) the potential assumption and assignment of such agreements in connection with the sale of the Assets, (ii) related Cure Costs, if any, and (iii) information regarding a Winning Bidder's adequate assurance of future performance, and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Potential Assigned Contracts and Leases, to the extent necessary.

22.    The Debtors propose that the following Assumption and Assignment Procedures govern the assumption and assignment of the Potential Assigned Contracts and Leases in connection with the sale of any of the Assets to one or more Winning Bidder(s):

    a.    **Assumption and Assignment Notice**. As soon as reasonably practical after entry of the Bidding Procedures Order, the Debtors will file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty the Assumption and Assignment Notice, which shall include as an exhibit a schedule (the "***Potential Assigned Contracts and Leases Schedule***"), that specifies each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with a Sale Transaction, including the name of each relevant Contract/Lease Counterparty, and the respective Cure Costs, if any, relating to such executory contract or unexpired lease. The Assumption and Assignment Notice will also (i) state that the Debtors are or may be seeking the sale, assumption, and assignment of the Potential Assigned Contracts and Leases; (ii) state that assumption or assignment of any Potential Assigned Contract or Lease is not guaranteed and is subject to designation by a Winning Bidder and Court approval; (iii) prominently display the deadlines by which Contract/Lease Counterparties must file an Assumption and Assignment Objection (as defined below); and (iv) prominently display the date, time, and location of the Sale Hearing.

    b.    **Assumption and Assignment Objections**. Any objections to the proposed assumption and assignment of any Potential Assigned Contract or Lease on any grounds, including without limitation, the amount of the proposed Cure Costs, if any, or the ability of a Winning Bidder to provide adequate assurance of future performance ("***Adequate Assurance***") (each, an "***Assumption and Assignment Objection***"), must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection, including, if applicable, the cure amount alleged to be owed to the objecting Contract/Lease Counterparty or the adequate assurance alleged to be required, together with any applicable and appropriate documentation in support thereof; (iv) be filed with the Court no later than **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** (the "***Assumption and Assignment Objection Deadline***"); and (v) be served on the Objection Notice Parties (as defined below).

    c.    **Objection Notice Parties**. Each Assumption and Assignment Objection must be filed with the Court and served on the following parties (the "***Objection Notice Parties***") so as to be received no later than the Assumption and Assignment Objection Deadline: (i) counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201,

Attn: Matthew D. Struble and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: George R. Howard; (ii) counsel to the Majority Secured Noteholder, Haynes Boone, LLP, 2801 N Harwood St Suite 2300, Dallas, TX 75201, Attn: Ian Peck and Jordan Chavez; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson Ruff and Jana Whitworth; and (iv) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases.

d.   **Resolution of Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such Assumption and Assignment Objection will be resolved at the Sale Hearing, but such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If an Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

e.   **Modification of Assigned Contracts and Leases Schedule**. At any time prior to the closing of any Sale Transaction, the Debtors may: (i) supplement the Potential Assigned Contracts and Leases Schedule with executory contracts or unexpired leases inadvertently omitted therefrom; (ii) remove or add any Potential Assigned Contract or Lease from or to the list of executory contracts and unexpired leases ultimately selected as Potential Assigned Contracts and Leases that the Winning Bidder(s) proposes be assumed and assigned to it in connection with the Sale Transaction(s); and/or (iii) modify the proposed Cure Costs.

f.   **Supplemental Assumption and Assignment Notice**. In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty a supplemental notice of assumption and assignment (the "**Supplemental Assumption and Assignment Notice**"). Each Supplemental Assumption and Assignment Notice will include the same information as would have been included in the Assumption and Assignment Notice.

g.   **Supplemental Assumption and Assignment Objections**. A Contract/Lease Counterparty listed on a Supplemental Assumption and Assignment Notice may file an objection (a "**Supplemental Assumption and Assignment Objection**") on the same bases set forth above. All

Supplemental Assumption and Assignment Objections must comply with the requirements set forth above and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (i) the Assumption and Assignment Objection Deadline; or (ii) seven calendar days following the service of such Supplemental Assumption and Assignment Notice.

h.  **Resolution of Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files a Supplemental Assumption and Assignment Objection, the Winning Bidder(s) has designated that it intends to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court to resolve such objection, but such Potential Assigned Contract or Lease shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion.  If a Supplemental Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

i.  **Failure to Timely File Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections**.  If a Contract/Lease Counterparty does not timely file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection: (i) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) shall be controlling and binding upon the applicable Contract/Lease Counterparty for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment thereof, notwithstanding anything to the contrary in any Potential Assigned Contract or Lease or any other document; (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption and assignment of the Potential Assigned Contract or Lease and the Cure Costs, if any; (iii) the Contract/Lease Counterparty will be forever barred and estopped from objecting to the assumption and assignment of such Potential Assigned Contract or Lease and rights thereunder, including any objection to the Cure Costs or the Adequate Assurance with respect to the applicable Potential Assigned Contract or Lease; and (iv) the Contract/Lease Counterparty will be forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Winning Bidder that any other additional amounts are due or other defaults exist, that conditions to assignment must be satisfied, or that there is any other objection or defense to the assumption or assignment of the applicable Potential Assigned Contract or Lease.

j.      **Reservation of Rights**. The inclusion of a Potential Assigned Contract or Lease on the Potential Assigned Contracts and Leases Schedule will not: (i) obligate the Debtors to assume any Potential Assigned Contract or Lease listed thereon or obligate the Winning Bidder to take assignment of such Potential Assigned Contract or Lease; or (ii) constitute any admission or agreement of the Debtors that such Potential Assigned Contract or Lease is an executory contract or unexpired lease.  Only those Potential Assigned Contracts and Leases that are included on a schedule of assumed and assigned contracts and leases attached to the definitive sale agreement with any Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to such Winning Bidder.

## BASIS FOR RELIEF REQUESTED

**A.     The Bidding Procedures are Fair and Appropriate and Should Be Approved.**

23.     The Bidding Procedures are designed to promote the paramount goal of any proposed sale of estate property: maximizing the value of sale proceeds received by the estate.  *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had fiduciary duty to maximize and protect value of estate's assets); *Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that the main goal of any proposed sale of property of a debtor's estate is to maximize value).  Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the fundamental goal of maximizing estate value and therefore are appropriate in the context of bankruptcy transactions.  *See In re ASARCO, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011) (affirming bankruptcy court's approval of bidding procedures designed to maximize the value of the debtor's estate); *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 536-37 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659

(S.D.N.Y. 1992) (observing that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

24.     The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Assets.  The Debtors have structured the Bidding Procedures to promote active bidding by interested parties and to elicit the highest or otherwise best offer(s) reasonably available for the Assets.  Additionally, the Bidding Procedures would allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that would encourage participation by financially capable bidders with demonstrated ability to timely consummate a Sale Transaction.  The Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or otherwise best offers for the completion of any Sale Transaction(s).

25.     Moreover, an orderly and expeditious sale process is necessary to preserve and maximize recoveries for the Debtors' stakeholders and facilitate an orderly and efficient exit from these chapter 11 cases.  In formulating the Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to run a sale process quickly and efficiently.

26.     The Debtors believe that the proposed Bidding Procedures will encourage prospective bidders to put forward their best Bids quickly in order to generate the highest or best recoveries for the Debtors' stakeholders, are appropriate under the relevant standards, and are consistent with other procedures previously approved by this Court.  *See, e.g.*, *In re Partners Pharmacy Serv., LLC*, No. 25-34698 (Bankr. S.D. Tex. Sep. 15, 2025); *In re RunItOneTime LLC*, No. 25 90191 (ARP) (Bankr. S.D. Tex. Aug. 28, 2025); *In re Aleon Metals, LLC*, No. 25-90305 (CML) (Bankr. S.D. Tex. Aug. 22, 2025); *In re Desktop Metal, Inc.*, No. 25-90268 (CML) (Bankr.

S.D. Tex. Jul. 30, 2025); *In re LifeScan Global Corp.*, No. 25-90259 (ARP) (Bankr. S.D. Tex. Jul.

26, 2025); *In re Sunnova Energy Int'l.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. Jul. 11, 2025); *In re Mosaic Sustainable Finance Corp.*, No. 25-90156 (CML) (Bankr. S.D. Tex. Jul. 2, 2025).

27.     Accordingly, the Debtors submit that the Bidding Procedures should be approved because they are reasonable, appropriate, and in the best interests of the Debtors, their estates, and all parties in interest.

**B.     The Stalking Horse Bid Protections Should Be Approved.**

28.     To the extent that the Debtors enter into a Stalking Horse Agreement, the Debtors request that the Court authorize the Debtors to provide the Bid Protections to the Stalking Horse Bidder.  As noted above, the Bidding Procedures contemplate (i) reimbursement of the Stalking Horse Bidder's reasonable documented expenses in an amount not to exceed $75,000 and (ii) a break-up fee not exceed 3% of the cash portion of the proposed purchase price for such Stalking Horse Bid,  which shall be treated as a superpriority administrative expense claim.

29.     For the avoidance of doubt, the Debtors are seeking authority to offer the Bid Protections to separate Stalking Horse Bidders for different asset packages to the extent necessary. Importantly, the Debtors seek to utilize the authority to provide the Bid Protections only if, in their reasonable business judgment, and in consultation with the Consultation Parties, such Bid Protections will promote the competitiveness of the bidding process, thereby maximizing the value of the Assets.  The Debtors believe that, considering the conservative nature of the Bid Protections, the value created for the Debtors' estates likely will greatly outweigh the cost of any Bid Protections.

30.     If the Debtors select one or more Stalking Horse Bidders for any of the Assets, the Debtors shall file a notice (the "***Stalking Horse Notice***") regarding their selection within one business day of selecting a Stalking Horse Bidder(s) and provide no less than three business days'

notice of the deadline to object to the Debtors' acceptance of the Stalking Horse Bid to (a) the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), (b) the Consultation Parties, and (c) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the chapter 11 cases (the "**Stalking Horse Notice Parties**") with no other or further notice regarding the Stalking Horse, the Stalking Horse Bid, or the Bid Protections being required.  Any Stalking Horse Notice will (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid, and, if the Stalking Horse Bidder is a credit bidder, what portion of its Bid is a Credit Bid and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) confirm the proposed Bid Protections are consistent with the Bidding Procedures Order; (e) attach the purchase agreement finalized with the Stalking Horse Bidder or otherwise summarize the material terms thereof; and (f) set forth the deadline to object to the Stalking Horse Bidder designation.  For the avoidance of doubt, upon entry of the Bidding Procedures Order, no further order approving the proposed Bid Protections shall be required if the proposed Bid Protections are consistent with the Bidding Procedures Order.

31.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (a "**Stalking Horse Objection**") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Notice Parties (as defined below) within three business days after the service of the Stalking Horse Notice.  No objections to

any Bid Protections shall be permitted so long as the Bid Protections offered to the Stalking Horse Bidder are consistent with the Bidding Procedures Order.

32.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with the Bidding Procedures Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit a proposed order to the Court approving the Debtors' entry into the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Notice.

33.     The Debtors believe that obtaining authority to offer the Bid Protections to one or more Stalking Horse Bidders is in the best interests of their estates because, among other things, such Bid Protections will encourage receipt of Bids that will establish a floor for further bidding that may increase the consideration given in exchange for some or all of the Assets.  *See Integrated Res.,* 147 B.R. at 659-60 ("[b]reak-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets.").  A Stalking Horse Bidder will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Bidding Procedures, although its Bid will be subject to Court approval and overbidding by other interested parties.  Without the Bid Protections, the Debtors may not be able to attract a Stalking Horse Bidder, which may impede the Debtors' ability to maximize value.

34.     The Fifth Circuit has applied the deferential business judgment standard to evaluate whether proposed bid protections are appropriate under the circumstances.  *See In re ASARCO,*

*L.L.C.*, 650 F.3d at 602-03 (affirming bankruptcy court's decision to apply the business judgment rule to evaluate whether an expense reimbursement bid protection was permissible). However, in some circumstances, courts in the Fifth Circuit have applied the more stringent strict necessity standard under section 503 of the Bankruptcy Code. *See Matter of Bouchard Transp. Co., Inc.*, 74 F.4th 743, 750 (5th Cir. 2023) (finding it unnecessary to determine which standard applied to the case at hand where, under either standard, the proposed protections should be approved). Here, the Court should approve the Bid Protections as satisfying either standard.

35.     The Debtors propose to pay the Bid Protections only if the Debtors determine, after good faith, arm's-length negotiations, and in consultation with the Consultation Parties, that providing such Bid Protections would be necessary and beneficial for their estates. Similar types of bid protections have been approved by this Court. *See, e.g.*, *In re Anthology, Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Nov. 12, 2025) (authorizing certain protections, including reimbursement of the stalking horse bidder's reasonable expenses and payment of a break-up fee, subject to a cap, to be paid pursuant to the stalking horse agreement); *In re RunItOneTime LLC*, No. 25-90191 (ARP) (Bankr. S.D. Tex. Aug. 28, 2025) (same); *In re Aleon Metals, LLC*, No. 25-90305 (CML) (Bankr. S.D. Tex. Aug. 22, 2025) (approving the debtors' entry into stalking horse agreement pursuant to which the debtors agreed to pay certain expenses of the stalking horse bidder, subject to a cap); *In re Sunnova Energy Int'l.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. Jul. 11, 2025) (same).

36.     As further described below, the Bid Protections are also (a) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) commensurate to the real and material benefits conferred upon the Debtors' estates by a Stalking Horse Bidder, and (c) fair, reasonable, and appropriate,

including in light of the size and nature of the proposed transactions, the commitments that will be made, and the efforts that will be expended by any Stalking Horse Bidder.

37.     Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court grant the Debtors the authority to incur and pay the Bid Protections to maximize the value of the Debtors' estates.

**C.     Superpriority Administrative Expense Status of the Bid Protections is Appropriate Under the Circumstances.**

38.     Granting the Bid Protections superpriority administrative expense claim status is warranted under the Bankruptcy Code and appropriate under the circumstances.   Under section 503(b) of the Bankruptcy Code, administrative expenses constituting "the actual, necessary costs and expenses of preserving the estate" are afforded administrative expense priority.  *See* 11 U.S.C. § 503(b).   Courts in the Fifth Circuit recognize that stalking horse bid protections qualify as "actual" and "necessary costs and expenses of preserving the estate" under section 503(b) and thus are afforded administrative expense priority. *See generally In re Bouchard Transp. Co.*, 74 F.4th 743 (5th Cir. 2023).

39.     For the reasons described above, the Bid Protections are necessary to ensure that the Debtors' estates obtain the greatest possible value for their Assets.   The ability to identify a Stalking Horse Bid (if any) and offer such bidder the Bid Protections are a key component of the Debtors' efforts to realize a value-maximizing transaction for the benefit of the estates.   Entry into a Stalking Horse Agreement would preserve the value created by this process while enabling the Debtors to confirm the contemplated transaction with any Stalking Horse Bidder is the best available transaction by continuing to actively market the Assets, subject to the floor set by the Stalking Horse Bid.   The Debtors, in their reasonable business judgment therefore seek authority

to offer Bid Protections to any Stalking Horse Bidder with priority over all administrative expenses.

40.     Accordingly, this Court should find that the superpriority administrative expense treatment of the Bid Protections is justified.

**D.     The Assumption and Assignment of Assigned Contracts and Leases Should Be Authorized.**

41.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The standard governing approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtors' reasonable business judgment supports assumption or rejection.  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (noting that a bankruptcy court will generally approve a debtor's choice to assume or reject an executory contract under the deferential business judgment rule (citation omitted)); *see also In re J.C. Penney Direct Mktg. Servs., L.L.C.*, 50 F.4th 532, 534 (5th Cir. 2022) (applying the business judgment standard to a debtor's decision to assume or reject executory contracts and unexpired leases)*; Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311-13 (5th Cir. 1985) (same).  Unless the product of "bad faith, or whim or caprice," courts generally affirm a debtor's decision to reject an executory contract or unexpired lease under the business judgment rule.  *In re Sanchez Energy Corp.*, 631 B.R. 847, 863 (Bankr. S.D. Tex. 2021) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001)) (internal quotation marks omitted).

42.     The assumption of the Potential Assigned Contracts and Leases in connection with a Sale Transaction is an exercise of the Debtors' sound business judgment because a Winning Bidder may determine that such contracts and leases may be necessary to operate and/or maintain

the purchased Assets.  As such, the assumption and assignment of the Potential Assigned Contracts and Leases could be essential to obtaining the highest or otherwise best offer for the Assets.  As such, the Debtors' assumption and assignment of the Potential Assigned Contracts and Leases is an exercise of the Debtors' sound business judgment and should be approved.

43.     The consummation of a Sale Transaction involving the assignment of any of the Potential Assigned Contracts and Leases would be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under any of the Potential Assigned Contracts and Leases must be cured or that adequate assurance be provided that such defaults will be promptly cured.  The Debtors' assumption and assignment of any Potential Assigned Contract or Lease would be contingent upon payment of the applicable Cure Cost and effective only upon the closing of an applicable Sale Transaction or any later applicable effective date.  As set forth above, the Debtors propose to file with the Court and serve on each Contract/Lease Counterparty, the Assumption and Assignment Notice, which will include the Potential Assigned Contracts and Leases Schedule indicating the Debtors' calculation of the Cure Cost for each Potential Assigned Contract or Lease.  As a result, the Contract/Lease Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Potential Assigned Contracts and Leases to the Winning Bidder, including the proposed Cure Costs.

44.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property only if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2)(B).  This provision of the Bankruptcy Code "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it

bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980). In the Fifth Circuit, the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case. *See In re Bourbon Saloon, Inc.*, 647 Fed. App'x. 342, 346 (5th Cir. 2016); *see also Absinthe Bar, L.L.C. v. Bourbon Saloon, Inc. (In re Bourbon Saloon, Inc.)*, 647 Fed. App'x. 342, 346 (5th Cir. 2016) ("A bankruptcy court's determination of adequate assurance of future performance and the ability to cure under § 365 is a fact-specific question.") (citing *Tex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x. 122, 126 (5th Cir. 2003)). Among other possibilities, adequate assurance may be given by demonstrating the financial ability of the assignee to perform the obligations under the executory contract subject to assignment. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has the financial resources and expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

45.     As part of the Bidding Procedures, any Potential Bidder will be required to submit sufficient information for the Debtors to be able to evaluate such Potential Bidder's ability to consummate a Sale Transaction. In addition, to the extent necessary, the Debtors will present facts at the Sale Hearing to show the financial credibility, willingness, and ability of any Winning Bidder(s) to perform under the Potential Assigned Contracts and Leases. In addition, the Bidding Procedures require that each Qualified Bid identify with particularity the Debtors' executory contracts and unexpired leases sought to be assumed and assigned in connection with the Qualified Bid and demonstrate that such bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. Finally, the Sale Hearing will afford the Court

and other interested parties the opportunity to evaluate the ability of the Winning Bidder(s) to provide adequate assurance of future performance under the Potential Assigned Contracts and Leases, as required under section 365(b)(1)(C) of the Bankruptcy Code.  As set forth above, the Debtors will give notice to all parties to the Potential Assigned Contracts and Leases, which notice will include the amounts the Debtors believe are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

46.    Accordingly, the Debtors request approval under section 365 of the Bankruptcy Code of the Debtors' assumption and assignment of the Potential Assigned Contracts and Leases in connection with any Sale Transaction(s).  The Debtors further request that any Sale Order provide that the Potential Assigned Contracts and Leases will be transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provisions in the Potential Assigned Contracts and Leases, including those described in sections 365(b)(2) and (f)(1) and (f)(3) of the Bankruptcy Code that prohibit such assignment.

**E.    The Sale Transaction(s) Satisfy the Requirements of Section 363 of the Bankruptcy Code.**

47.    Ample authority exists for approval of the Sale Transaction(s) contemplated by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  "[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d. 1223, 1226 (5th Cir. 1986); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009) (same).

48.     The business judgment standard "is not a difficult standard to satisfy," and merely requires a court to find that "a reasonable business person would make a similar decision under similar circumstances." *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (applying the business judgment standard in the context of section 365 of the Bankruptcy Code); *see also In re Network Access Sols., Corp.*, 330 B.R. 67, 74 (Bankr. D. Del. 2005) ("There is, however, no discernable difference in the . . . standard for approval under section[s] 363 and 365 [of the Bankruptcy Code]." (citation omitted)).   Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).   Importantly, a sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.   *See, e.g.*, *In re Lionel*, 722 F.2d at 1071; *see also In re Food Barn Stores*, 107 F.3d at 565 (recognizing that paramount goal of any proposed sale of property of estate is to maximize value).

      a.     *The Debtors Have Demonstrated a Sound Business Justification for the Potential Sale Transaction(s).*

49.     A strong business justification exists for the sale of the Assets as described herein. In light of the Debtors' prepetition efforts to explore strategic alternatives, consummating a value-maximizing sale is necessary to preserve the value of the Debtors' estates.   The Debtors believe that any Sale Transaction(s) consummated in accordance with the Bidding Procedures would produce a fair and reasonable purchase price for the Assets given the Debtors' efforts (both to date and following entry of the Order) to find a potential purchaser.

50.     The Bidding Procedures are carefully designed to facilitate a flexible, robust, and competitive sale process which started prepetition.  The Bidding Procedures allow all potential bidders an opportunity to conduct in-depth diligence and provide an appropriate framework for the Debtors to review, analyze, and compare all Bids received to determine which Bids are in the best interests of the Debtors' estates and their economic stakeholders.   Any Sale Transaction(s) governed by the Bidding Procedures undoubtedly would serve the important objectives of obtaining a fair and reasonable purchase price for the Assets, along with the highest or otherwise best value, which would inure to the benefit of all parties in interest in the chapter 11 cases.

51.     For the foregoing reasons, the Debtors submit that a strong business justification exists for approving the Sale Transaction(s) and related relief requested herein.

    b.     *The Notices Are Reasonable and Appropriate.*

52.     The Sale Notice: (a) will be served in a manner that provides parties in interest notice of the date, time, and location of the Auction (if any) and Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale Transaction(s) or the assumption and assignment of contracts and leases; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale Transaction(s).  Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bidding Procedures Order after notice and a hearing before it is served on parties in interest.

53.     Additionally, within one business day after the deadline to designate a Stalking Horse Bidder or as soon as reasonably practicable thereafter, the Debtors will file with the Court a notice including, among other things, the identity of any Stalking Horse Bidder(s), key terms of any Bids from any Stalking Horse Bidder(s), any Bid Protections, and the proposed Stalking Horse Agreement attached thereto in its entirety as an exhibit.

**F.     The Winning Bidder(s) Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

54.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases property for value, in good faith, and without notice of adverse claims. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor, notwithstanding that the sale under section 363(b) of the Bankruptcy Code may subsequently be reversed or modified on appeal.  11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code "serve[s] the interests of finality and certainty, and by extension, encourage[s] bidding for estate property.  *Matter of Fieldwood Energy LLC*, 93 F.4th 817, 822 (5th Cir. 2024); *see also In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 409-410 (5th Cir. 2019) (noting that, absent such finality, "potential buyers would not even consider purchasing any bankrupt's property.");  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)).

55.     Although the Bankruptcy Code does not define "good faith," the Fifth Circuit has defined a "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims."  *Odwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. Appx. 195 (5th Cir. 2015) (citing *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014) (internal citations omitted)).  Having "notice of adverse claims" requires something more than mere awareness that a party has objected to the transaction. *In re TMT Procurement Corp.*, 764 F.3d at 522.  The Fifth Circuit has also noted that "the misconduct that would destroy a purchaser's good faith status . . . involve[s] fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of the other bidders."  *Id*.

56.     The Debtors submit that the Winning Bidder would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.  The Bidding Procedures require each Qualified Bidder participating in the Auction to confirm that it has not engaged in any collusion with respect to any Bid or any Sale Transaction(s).  Any asset purchase agreement with the Winning Bidder, including any Stalking Horse Agreement, will be negotiated at arm's length and in good faith.  Further evidence, to the extent necessary, will be presented at the Sale Hearing. The Debtors believe that providing any Winning Bidder with such protection will ensure that the maximum price will be received by the estates for the Assets and closing of the same will occur promptly.   Accordingly, the Debtors seek a finding that any Winning Bidder is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

## G.     The Assets Should Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances Under Section 363(f) of the Bankruptcy Code.

57.     In the interest of attracting the best and highest offers, the Assets should be sold free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the applicable Sale Transaction(s).   Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

58.     The Debtors submit that the Sale Transaction(s) will satisfy the requirements of section 363(f) of the Bankruptcy Code.  To the extent a party objects to the Sale Transaction(s) on the basis that it holds a lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims or that such lien is in *bona fide* dispute.  In addition, to the extent the Debtors discover any party may hold a lien on all, or a portion of, the Assets, the Debtors will provide such party with notice of, and an opportunity to object to, the Sale Transaction(s).  Absent objection, each such party will be deemed to have consented to the sale of the Assets.

59.     Accordingly, the Debtors believe that the Sale Transaction(s) (a) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (b) should be approved free and clear of all liens, claims, interests, and encumbrances.

## WAIVER OF BANKRUPTCY RULE 6004(a), 6004(h), AND 6006(d)

60.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), and the fourteen (14) day stay of an order authorizing the assignment of an executory contract or unexpired lease under Bankruptcy Rule 6006(d).

## RESERVATION OF RIGHTS

61.     Notwithstanding anything in any of this Court's Orders entered in these chapter 11 cases to the contrary, nothing contained in this Motion shall constitute, nor is it intended to constitute, (a) an implication or admission as to the validity, priority, enforceability, or perfection

of any claim, lien, security interest in, or other encumbrance against the Debtors and the property of their estates, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any proposed order, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.   In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

## NOTICE

62.    Notice of this Motion has been provided by delivery to:  (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (f) the Secured Noteholders; (g) counsel to the Majority Secured Noteholder; (h) all state attorneys' generals in states where the Assets are located; (i) municipalities in which the Assets are located; (j) all entities known to have asserted a lien or security interest against any of the Assets; and (k) all prospective bidders previously identified or solicited (collectively, the "***Notice Parties***").  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

**NO PRIOR REQUEST**

63.     No prior motion for the relief requested herein has been made to this Court or any other court.

The Debtors respectfully request that the Court (a) enter the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, (b) enter the Sale Order(s) following the conclusion of the Sale Hearing, and (c) grant them such other and further relief to which the Debtors may be justly entitled.

*[The remainder of this page is intentionally left blank]*

Dated: March 8, 2026
Houston, Texas

/s/  Matthew D. Struble

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Abigail R. Emery (TX 24133039)
845 Texas Avenue, Suite 4700
Houston, TX 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
aemery@velaw.com

-and-

Matthew D. Struble (TX 24102544)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716
Email: mstruble@velaw.com

-and-

George R. Howard (*pro hac vice* pending)
Emily C. Jungwirth (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: ghoward@velaw.com
ejungwirth@velaw.com

***Proposed Counsel to the Debtors and Debtors in Possession***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 8, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>  /s/ Matthew D. Struble            </u>
One of Counsel

# **EXHIBIT A**

**Proposed Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90393 (CML)** |
| | § | |
| **VIRIDIS CHEMICAL, LLC,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | **Re: Dkt. No. ____** |

**ORDER (A) APPROVING (I) BIDDING PROCEDURES,
(II) CERTAIN BID PROTECTIONS IN CONNECTION WITH A
STALKING HORSE AGREEMENT, IF ANY, (III) FORM AND MANNER
OF NOTICE OF SALE, AUCTION, AND SALE HEARING, AND (IV) ASSUMPTION
AND ASSIGNMENT PROCEDURES; (B) SCHEDULING AUCTION, SALE HEARING,
AND RELATED DEADLINES; (C) APPROVING (I) SALE OF SUBSTANTIALLY ALL
OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, AND (II) ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for entry of an order (this "***Order***") (a) authorizing and approving the bidding procedures, substantially in the form attached hereto as **Exhibit 1** (the "***Bidding Procedures***"), in connection with one or more sale transactions (each, a "***Sale Transaction***") of: all or substantially of the Debtors' assets (collectively, the "***Assets***"); (b) authorizing the Debtors to designate one or more stalking horse bidders (each, a "***Stalking Horse Bidder***") for all, substantially all, or any combination of the Assets, if any, offer each such Stalking Horse Bidder certain bid protections (the "***Bid Protections***"), and execute one or more stalking horse agreements (each, a "***Stalking Horse Agreement***") with such Stalking

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  4584 Kingwood Drive, Ste. E #152, Kingwood, Texas 77345.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion and Bidding Procedures.

Horse Bidder(s); (c) scheduling an auction in connection with the Sale Transaction(s) (the "**Auction**"), hearing dates in connection with the approval of the Sale Transaction(s) (the "**Sale Hearing**"), and other deadlines with respect to the Sale Transaction(s); (d) approving the form and manner of (i) notice of the Sale Transaction(s), the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**") and (ii) the notice of designation of a Stalking Horse Bidder (if any); and (e) approving procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction(s) (collectively, the "**Assigned Contracts and Leases**"), and approving the form and manner of notice to each relevant non-Debtor counterparty (each, a "**Contract/Lease Counterparty**") to an executory contract or unexpired lease regarding the Debtors' proposed assumption and assignment of the Assigned Contracts and Leases, including notice of proposed amounts necessary to cure any defaults thereunder (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and granting related relief, all as more fully set forth in the Motion and the First Day Declaration; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the First Day Declaration; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective

estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY FOUND AND DETERMINED THAT:[3]

1.      Jurisdiction and Venue. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Statutory and Legal Predicates. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Bankruptcy Rules, and Local Rules 2002-1, 6004-1, and 9006-1.

3.      Marketing and Sale Process. The Debtors and their advisors commenced a marketing process before the commencement of these chapter 11 cases to solicit and develop the highest or otherwise best offer for the Assets.

4.      Bidding Procedures. The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate under the circumstances and designed to maximize the value of the proceeds of any Sale Transaction(s).  The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

to generate the greatest level of interest in all or part of the Assets.  The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

5.  <u>Stalking Horse Bidder</u>. To the extent the Debtors select a Stalking Horse Bidder, any Bid Protections (to the extent payable under any applicable Stalking Horse Agreement) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed superpriority administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

6.  <u>Assumption and Assignment Procedures</u>. The Debtors have articulated good and sufficient business reasons for the Court to find that the Assumption and Assignment Procedures, as set forth in the Motion, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all Contract/Lease Counterparties to raise any objections to the proposed assumption and assignment of the Potential Assigned Contracts and Leases, including the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

7.  <u>Notice</u>. Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest, including those persons and entities entitled to notice pursuant to Bankruptcy Rule 2002.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

8.  The Motion is GRANTED as set forth herein.

9.     All objections to the relief granted in this order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.     Important Dates and Deadlines**

10.     The schedule set forth below and all other dates and deadlines set forth in the Bidding Procedures are approved, subject to modification in accordance with the Bidding Procedures.

| Date and Time | Event or Deadline |
|---|---|
| **April 15, 2026 at 5:00 p.m. (prevailing Central Time)** | **Indication of Interest Deadline.**<br><br>Deadline by which all non-binding Indications of Interest (as defined below) must be submitted to the Debtors by interested parties. |
| **April 20, 2026 at 5:00 p.m. (prevailing Central Time)** | **Stalking Horse Designation Deadline.** |
| **Within one business day following designation of a Stalking Horse Bidder (or as soon as reasonably practicable thereafter)** | **Notice of Stalking Horse (if any).** |
| **April 27, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline.** |
| **April 29, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any).**<br><br>The Auction will be held either (a) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, (b) virtually, or (c) at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **May 1, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s).**<br><br>The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale/Assumption and Assignment Objection Deadline.**<br><br>Deadline by which parties must file any Sale Objection or Assumption and Assignment Objection, as each of those terms is defined in the Bidding Procedures. |
| **May 8, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** | **Sale Hearing.** |

## B.    Bidding Procedures

11.    The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety, are fully incorporated herein by reference, and shall govern the submission, receipt, and analysis of bids for, and the Auction and sale of, the Assets.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

12.    The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the

effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

13.     Any party desiring to submit a Bid for all or any of the Assets shall comply with the Bidding Procedures and this Order.  All parties submitting Bids determined by the Debtors to be Qualified Bids in accordance with the Bidding Procedures are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the subject Assets.

14.     Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, shall have the right to, without limitation, (a) determine which bidders are Qualified Bidders, (b) determine which Bids are Qualified Bids, (c) determine which Qualified Bid is the highest or otherwise best offer, (d) designate the second highest or otherwise best Bid(s) as Back-Up Bid(s), each as it relates to the Auction, (e) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or this Order, or (iii) contrary to the best interests of the Debtors' estates and their creditors, (f) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates, (g) adjourn and/or cancel the Auction and/or the Sale Hearing in open court without further notice, and (h) withdraw the Motion at any time with or without prejudice.

15.     The Debtors shall have the right to, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Bidding Procedures, including to, among other things, (a) extend

or waive deadlines or other terms and conditions set forth in the Bidding Procedures, (b) adopt new rules and procedures for conducting the bidding and Auction process, or (c) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; *provided*, that such extensions, waivers, new rules and procedures, accommodations, and modifications do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Bankruptcy Code, or any order of the Court.

16.     Nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transactions with respect to any Asset with a Qualified Bidder.  If the Debtors determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within one business day of the making of such determination.

## C.     Stalking Horse Bid and Bid Protections

17.     The Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment and in consultation with the Consultation Parties, to: (a) select one or more Qualified Bidders to act as Stalking Horse Bidders in connection with any Sale Transaction(s) and enter into Stalking Horse Agreements with such Stalking Horse Bidders, and (b) in connection with any Stalking Horse Agreement, to provide (i) reimbursement of the Stalking Horse Bidder's reasonable documented expenses in an amount not to exceed $75,000 and (ii) a break-up fee not to exceed 3% of the cash portion of the proposed purchase price for such Stalking Horse Bid, which shall be treated as a superpriority administrative expense claim.

18.     Except for a Stalking Horse Bidder (to the extent of the Bid Protections), no person or entity shall be entitled to any expense reimbursement, break-up fees, termination fees, or similar type of payment or reimbursement; and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for allowance or payment

of any such expense reimbursement or fee, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

19.     Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures and/or any Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

20.     If the Debtors select one or more Stalking Horse Bidders for any of the Assets, the Debtors shall file a notice (the "***Stalking Horse Notice***") regarding their selection within one business day of selecting such Stalking Horse Bidder(s) and provide no less than three business days' notice of the deadline to object to the Debtors' designation of the Stalking Horse Bid to (a) the U.S. Trustee, (b) the Consultation Parties, and (c) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the chapter 11 cases (the "***Stalking Horse Notice Parties***") with no other or further notice regarding the Stalking Horse Bidder, the Stalking Horse Bid, or the Bid Protections being required.  Any Stalking Horse Notice will (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid, and, if the Stalking Horse Bidder is a credit bidder, what portion of its Bid is a Credit Bid and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) confirm the proposed Bid Protections are consistent with the Bidding Procedures Order; (e) attach the purchase agreement finalized with the Stalking Horse Bidder or otherwise summarize the material terms thereof; and (f) set forth the deadline to object

to the Stalking Horse Bid designation.  No further order approving the proposed Bid Protections shall be required if the proposed Bid Protections are consistent with this Order.

21.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (a "***Stalking Horse Objection***") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Objection Notice Parties (as defined below) within three business days after the service of the Stalking Horse Notice.  No objections to any Bid Protections shall be permitted so long as the Bid Protections offered to the Stalking Horse Bidder are consistent with the Bidding Procedures Order.

22.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with this Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit a proposed order to the Court approving the Debtors' entry into the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Notice.  For the avoidance of doubt, notwithstanding the approval of the Debtors' acceptance of any Stalking Horse Bid, such Bid will remain subject to higher and better offers, as determined in consultation with the Consultation Parties, and the Debtors shall not be authorized to consummate any sale with respect to any Stalking Horse Bid until after the Sale Hearing and the entry of an appropriate form of Sale Order by the Court.

**D.      Auction**

23.      If more than one Qualified Bid with respect to the same Assets is timely received, the Debtors may conduct an Auction to determine the Winning Bidder with respect to such Assets.

24.      If an Auction is held, such Auction shall be held on **April 29, 2026 at 9:00 a.m. (prevailing Central Time)** (a) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, (b) virtually, or (c) at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures.  Any Auction held may be conducted via remote video or in-person at the Debtors' election.  As set forth more fully in the Bidding Procedures, only Qualified Bidders will be eligible to participate in the Auction.

**E.      Form and Manner of Sale Notice**

25.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable after entry of this Order, the Debtors will cause the Sale Notice to be served upon the parties set forth in the Motion, posted on the Debtors' Case Website, and published once in *USA Today* or another publication with similar national circulation.  No other or further notice of any proposed Sale Transaction(s) or Sale Hearing shall be required.

26.      No later than one business day after selection of a Winning Bidder, or as soon as reasonably practicable thereafter, the Debtors will serve upon the parties set forth in the Motion timely and proper notice of the proposed Sale Transaction(s), including, without limitation: (a) the Winning Bidder(s), (b) the Back-Up Bidder(s), if applicable, (c) the key terms of the proposed Sale Transaction(s), and (d) the date, time, and place of the Sale Hearing.

**F.      Sale Hearing and Sale Objection Deadline**

27.      If the Debtors elect to proceed with one or more Sale Transaction(s) pursuant to a sale under section 363 of the Bankruptcy Code, the Debtors will seek entry of an order (a "***Sale***

*Order*") authorizing and approving, among other things, the Sale Transaction(s) in which some or all of the Assets will be sold to the applicable Winning Bidder(s).

28.     If any party fails to timely file with the Court and serve an objection according to the deadlines set forth in the table in paragraph 10 of this Order, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction(s), including the transfer of all or any of the Assets to the Winning Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

29.     The Sale Hearing will be held on **May 8, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)**, or at such other time as the Court may establish.  The Sale Hearing may be adjourned by this Court or the Debtors from time to time without further notice than by announcement in open court or through the filing of a notice or other document on this Court's docket.

**G.     Assumption and Assignment Procedures**

30.     The Assumption and Assignment Procedures below are hereby approved and shall be the procedures by which the Debtors will notify Contract/Lease Counterparties to proposed Potential Assigned Contracts and Leases of proposed Cure Costs in the event the Debtors determine to assume and assign such Potential Assigned Contracts and Leases in connection with the sale of any of the Assets to one or more Winning Bidder(s).  Nothing in this Order shall be deemed to limit the Debtors' ability to negotiate partial assumption and/or assumption and assignment of any of the Potential Assigned Contracts and Leases with Contract/Lease Counterparties on a consensual basis.

a.   **Assumption and Assignment Notice**. As soon as reasonably practical after entry of the Bidding Procedures Order, the Debtors will file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty the Assumption and Assignment Notice, which shall include as an exhibit a schedule (the "*Potential Assigned Contracts and Leases Schedule*"), that specifies each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with a Sale Transaction, including the name of each relevant Contract/Lease Counterparty, and the respective Cure Costs, if any, relating to such executory contract or unexpired lease.  The Assumption and Assignment Notice will also (i) state that the Debtors are or may be seeking the sale, assumption, and assignment of the Potential Assigned Contracts and Leases; (ii) state that assumption or assignment of any Potential Assigned Contract or Lease is not guaranteed and is subject to designation by a Winning Bidder and Court approval; (iii) prominently display the deadlines by which Contract/Lease Counterparties must file an Assumption and Assignment Objection (as defined below); and (iv) prominently display the date, time, and location of the Sale Hearing.

b.   **Assumption and Assignment Objections**. Any objections to the proposed assumption and assignment of any Potential Assigned Contract or Lease on any grounds, including without limitation, the amount of the proposed Cure Costs, if any, or the ability of a Winning Bidder to provide adequate assurance of future performance ("*Adequate Assurance*") (each, an "*Assumption and Assignment Objection*"), must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection, including, if applicable, the cure amount alleged to be owed to the objecting Contract/Lease Counterparty or the adequate assurance alleged to be required, together with any applicable and appropriate documentation in support thereof; (iv) be filed with the Court no later than **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Assumption and Assignment Objection Deadline*"); and (v) be served on the Objection Notice Parties (as defined below).

c. **Objection Notice Parties**. Each Assumption and Assignment Objection must be filed with the Court and served on the following parties (the "Objection Notice Parties") so as to be received no later than the Assumption and Assignment Objection Deadline: (i) counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Matthew D. Struble and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: George R. Howard; (ii) counsel to the Majority Secured Noteholder, Haynes Boone, LLP, 2801 N Harwood St Suite 2300, Dallas, TX 75201, Attn: Ian Peck and Jordan Chavez; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson Ruff and Jana Whitworth; and (iv) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases.

d. **Resolution of Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such Assumption and Assignment Objection will be resolved at the Sale Hearing, but such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If an Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

e. **Modification of Assigned Contracts and Leases Schedule**. At any time prior to the closing of any Sale Transaction: the Debtors may (i) supplement the Potential Assigned Contracts and Leases Schedule with executory contracts or unexpired leases inadvertently omitted therefrom; (ii) remove or add any Potential Assigned Contract or Lease from or to the list of executory contracts and unexpired leases ultimately selected as Potential Assigned Contracts and Leases that the Winning Bidder(s) proposes be assumed and assigned to it in connection with the Sale Transaction(s); and/or (iii) modify the proposed Cure Costs.

f. **Supplemental Assumption and Assignment Notice**. In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty a supplemental notice of assumption and assignment (the "***Supplemental Assumption and Assignment Notice***"). Each Supplemental Assumption and Assignment Notice will include the same information as would have been included in the Assumption and Assignment Notice.

g. **Supplemental Assumption and Assignment Objections**. A Contract/Lease Counterparty listed on a Supplemental Assumption and Assignment Notice may file an objection (a "***Supplemental Assumption and Assignment Objection***") on the same bases set forth above. All Supplemental Assumption and Assignment Objections must comply with the requirements set forth above, and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (i) the Assumption and Assignment Objection Deadline; or (ii) seven calendar days following the service of such Supplemental Assumption and Assignment Notice.

h. **Resolution of Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files a Supplemental Assumption and Assignment Objection, the Winning Bidder(s) has designated that it intends to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court to resolve such objection, but such Potential Assigned Contract or Lease shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If a Supplemental Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidder's Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

i. **Failure to Timely File Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty does not timely file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection: (i) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) shall be controlling and binding upon the applicable Contract/Lease Counterparty for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment thereof, notwithstanding anything to the contrary in any Potential Assigned Contract or Lease or any other document; (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption and assignment of the Potential Assigned Contract or Lease and the Cure Costs, if any; (iii) the Contract/Lease Counterparty will be forever barred and estopped from objecting to the assumption and assignment of such Potential Assigned Contract or Lease and rights thereunder, including any objection to the Cure Costs or the Adequate Assurance with respect to the applicable Potential Assigned Contract or Lease; and (iv) the Contract/Lease Counterparty will be forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Winning Bidder that any other additional amounts are due or other defaults exist, that conditions to assignment must be satisfied, or that there is any other objection or defense to the assumption or assignment of the applicable Potential Assigned Contract or Lease.

j. **Reservation of Rights**. The inclusion of a Potential Assigned Contract or Lease on the Potential Assigned Contracts and Leases Schedule will not: (i) obligate the Debtors to assume any Potential Assigned Contract or Lease listed thereon or obligate the Winning Bidder to take assignment of such Potential Assigned Contract or Lease; or (ii) constitute any admission or agreement of the Debtors that such Potential Assigned Contract or Lease is an executory contract or unexpired lease. Only those Potential Assigned Contracts and Leases that are included on a schedule of assumed and assigned contracts and leases attached to the definitive sale agreement with the Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Winning Bidder.

## H.    Miscellaneous

31.    All persons and entities that participate in the Auction or bidding for any Assets during the Sale Transaction(s) process shall be deemed to have knowingly and voluntarily (a) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order,

(b) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, and (c) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

33.     The Debtors are authorized, in consultation with the Consultation Parties, to make changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents in order to facilitate a value-maximizing sale of the Assets without further order of the Court, including, without limitation, the extension of various deadlines and changes to correct typographical and grammatical errors.

34.     This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

36.     In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, the Bidding Procedures shall govern in all respects.

37.     Notwithstanding anything in any of this Court's orders entered in these chapter 11 cases to the contrary, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, (a) an implication or admission as to

the validity, priority, enforceability, or perfection of any claim, lien, security interest in, or other encumbrance against the Debtors and the property of their estates, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  In addition, nothing in the Motion or this Order should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

38.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

39.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>EXHIBIT 1</u>**

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 26-90393 (CML) |
| | § | |
| VIRIDIS CHEMICAL, LLC, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | |

## BIDDING PROCEDURES

### Overview

On March 8, 2026 (the "***Petition Date***"), Viridis Chemical, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***"). The Debtors' chapter 11 cases have been consolidated for procedural purposes under the lead case, Viridis Chemical, LLC, *et al.*, Case No. 26-90393 (the "***Chapter 11 Cases***").

On [_], 2026, the Court entered an order [Docket No. [_]] (the "***Bidding Procedures Order***"),[2] which approved these procedures (the "***Bidding Procedures***") for the selection of the highest or otherwise best offer or collection of offers to acquire the Assets (as defined below) on the terms and conditions set forth herein.

### Summary of Important Dates

These Bidding Procedures provide interested parties the opportunity to submit competing bids for all or any portion of the Assets and to participate in an auction to be conducted by the Debtors (the "***Auction***"), if necessary.

The key dates for the sale process are as follows. Such dates may be extended or otherwise modified by the Debtors, in consultation with the Consultation Parties (as defined below), by filing a notice of such extension or modification on the Court's docket.

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436). The location of the Debtors' corporate headquarters and the Debtors' service address is: 4584 Kingwood Drive, Ste. E #152, Kingwood, Texas 77345.

[2] Unless otherwise defined herein, capitalized terms used but not otherwise defined herein shall have the meanings set forth in the First Day Declaration.

| Date and Time | Event or Deadline |
|---|---|
| **April 15, 2026 at 5:00 p.m. (prevailing Central Time)** | **Indication of Interest Deadline.**<br><br>Deadline by which all non-binding Indications of Interest (as defined below) must be submitted to the Debtors by interested parties. |
| **April 20, 2026 at 5:00 p.m. (prevailing Central Time)** | **Stalking Horse Designation Deadline.** |
| **Within one business day following designation of a Stalking Horse Bidder (or as soon as reasonably practicable thereafter)** | **Notice of Stalking Horse (if any).** |
| **April 27, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline.** |
| **April 29, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any).**<br><br>The Auction will be held either (a) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, (b) virtually, or (c) at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **May 1, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s).**<br><br>The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale/Assumption and Assignment Objection Deadline.**<br><br>Deadline by which parties must file any Sale Objection or Assumption and Assignment Objection, as each of those terms is defined in the Bidding Procedures. |
| **May 8, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** | **Sale Hearing.** |

## Property to Be Sold

The Debtors seek to sell all or substantially all of their assets, referred to herein as the "***Assets***" and, each sale in furtherance of the same, a "***Sale Transaction***".

## Due Diligence

The Debtors have posted copies of all material documents related to the Assets to the Debtors' confidential electronic data room (the "***Data Room***"). To access the Data Room, an interested party must submit to the Debtors or their advisors the following:

1. an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with

the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement will govern); and

2. sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (a) has the financial wherewithal to consummate the applicable proposed Sale Transaction and (b) intends to access the Data Room for a purpose consistent with these Bidding Procedures.

Each interested party that meets the above requirements to the satisfaction of the Debtors will be a "***Potential Bidder***." As soon as reasonably practicable, the Debtors will provide all Potential Bidders access to the Data Room; *provided that*, such access may be terminated by the Debtors in their sole discretion at any time, including if (a) a Potential Bidder does not become a Qualified Bidder, (b) such Potential Bidder fails to comply with reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction, or (c) these Bidding Procedures are terminated.

Each Potential Bidder will comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction.

Until the Bid Deadline, the Debtors will provide any additional information requested by Potential Bidders that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests will be directed to the Debtors' advisors, Brian Williams (bwilliams@thecmagroup.com) and Ben Godbout (bgodbout@thecmagroup.com).  Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder, (b) such Potential Bidder fails to comply with reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction, or (c) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives will be obligated to furnish any information of any kind whatsoever relating to the Assets: (a) to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth above, (iii) if sharing such information would jeopardize the Debtors' trade secrets, or (iv) in the case of competitively sensitive information, is a competitor of the Debtors (except pursuant to "clean team" or other information sharing procedures reasonably satisfactory to the Debtors); and (b) to the extent not permitted by law.

### **Bidding and Auction Process**

### **Initial Indication of Interest**

In order to be eligible to submit a Bid, Potential Bidders must first submit a non-binding Indication of Interest (an "***Indication of Interest***") so that it is received by the Debtors and their advisors no later than **April 15, 2026 at 5:00 p.m. (prevailing Central Time)** (the "***IOI Deadline***"); *provided that*, the Debtors may extend the IOI Deadline or waive the requirement that

a Potential Bidder submit an Indication of Interest prior to submitting a Bid for one or more Potential Bidders in consultation with the Consultation Parties and without further order of the Court.   If the Debtors extend the IOI Deadline, the Debtors will promptly notify all Potential Bidders and file a notice on the Court's docket.  The Debtors will notify each Potential Bidder whether its Indication of Interest satisfies the requirements set forth herein such that the Potential Bidder is qualified to submit a Bid reflective of its Indication of Interest.  For the avoidance of doubt, the Debtors may consider Indications of Interest received prior to the commencement of these chapter 11 cases which otherwise meet the qualifications set forth in these Bidding Procedures and may find that such Indications of Interest meet the eligibility requirements for the Potential Bidder to submit a Bid.

An Indication of Interest must include the following: (a) the Purchase Price (as defined and sufficient to meet the requirements set forth below), (b) the proposed form(s) of consideration, (c) which of the Assets the Potential Bidder proposes would be acquired, (d) a description of the diligence necessary to submit a binding Bid prior to the Bid Deadline, (e) any other material terms or conditions that the Potential Bidder reasonably anticipates would be necessary to submit a binding Bid prior to the Bid Deadline and/or consummate the proposed transaction (including, without limitations, any necessary internal consents and approvals), and (f) a statement that the Potential Bidder is prepared to work in good faith to consummate the proposed transaction and finalize a binding proposal prior to the Bid Deadline; *provided*, that the Debtors may amend this list to add or remove requirements in consultation with the Consultation Parties without further order of the Court subject to providing notice to all Potential Bidders; *provided further*, that the Debtors may waive any of the requirements set forth above with respect to any Potential Bidder, in consultation with the Consultation Parties and without further order of the Court.

Indications of Interest must be submitted by email to the following:

<div align="center">

Vinson & Elkins, LLP
ghoward@velaw.com
mstruble@velaw.com

Carl Marks Advisory Group LLC
bwilliams@thecmagroup.com
bgodbout@thecmagroup.com

</div>

To the extent reasonably practicable, counsel to the Debtors will provide copies of the Indications of Interest received, or summaries of the material terms of each Indication of Interest, to the Consultation Parties.

<div align="center">

**Bid Deadline**

</div>

A Potential Bidder that has timely submitted an Indication of Interest as set forth above and received confirmation from the Debtors that such Potential Bidder is eligible to submit a bid (a "**Bid**") on some or all of the Assets must deliver electronic copies of the Bid, so as to be received no later than **April 27, 2026 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**"); *provided*, that the Debtors may extend the Bid Deadline without further order of the Court subject to providing prior notice to all Potential Bidders, counsel to the Majority Secured Noteholder, and

counsel to any official committee of unsecured creditors (a "***Committee***").  Except as otherwise provided in these Bidding Procedures, the submission of a Bid by the Bid Deadline will constitute a binding and irrevocable offer to acquire the Asset(s) specified in such Bid.  Any party that does not submit a Bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction (if any).

Bids must be submitted by email to the following:

<div align="center">

Vinson & Elkins, LLP
ghoward@velaw.com
mstruble@velaw.com

Carl Marks Advisory Group LLC
bwilliams@thecmagroup.com
bgodbout@thecmagroup.com

</div>

### **Form and Content of Qualified Bids**

A Bid must contain a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the Bid.  To constitute a "***Qualified Bid***" a Bid must include, at a minimum, the following:

1. <u>Identity of Bidder</u>. A Qualified Bid must fully disclose, the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each equity holder or financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Potential Bidder, Consultation Party, or Qualified Bidder, and/or any insider, officer, or director of the foregoing.  Under no circumstances will any undisclosed principals, equity holders, or financial backers be associated with any Bid.

2. <u>Acquired Property</u>. A Qualified Bid must clearly identify in writing that the Potential Bidder is bidding on all of the Assets, or, if the Potential Bidder is bidding on substantially all Assets or any portion of the Assets, which of the Assets the Potential Bidder is not including in its Bid.

3. <u>Assumed Liabilities</u>. A Qualified Bid must clearly identify the particular liabilities, if any, the Potential Bidder seeks to assume.

4. <u>Purchase Price</u>. A Qualified Bid must specify the price (the "***Purchase Price***") proposed to be paid for the Assets to be purchased.  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors, in consultation with the Consultation Parties.  In the event a Stalking Horse Bid has been designated, the cash component of any Qualified Bid with respect to the Assets contemplated to be purchased in such Stalking Horse Bid must be in excess of the sum of: (a) the Purchase Price (as defined under the Stalking Hose Agreement) under the Stalking Horse Bid, if any,

with respect to the applicable Assets; (b) the Bid Protections set forth in such Stalking Horse Agreement, if any; and (c) the Minimum Overbid Amount (as defined below); *provided* that the Debtors, in consultation with the Consultation Parties, reserve the right to approve joint Bids that satisfy the foregoing conditions.

5. <u>Form of Consideration</u>. Each Bid (other than a Credit Bid) must be made for cash; *provided* that any Credit Bid shall include a cash component in an amount sufficient to satisfy the Bid Protections (if applicable).

6. <u>Joint Bids</u>. The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis; *provided* that the Bid is otherwise in compliance with the Bidding Procedures and the Potential Bidders have adhered to the restrictions on communications between Potential Bidders, as set forth herein.

7. <u>Deposit</u>. Except with respect to any Credit Bid, a Bid must be accompanied by a good faith Deposit (as defined below).

8. <u>Proposed Asset Purchase Agreement</u>. A Bid must include, in both PDF and MS-WORD format, an executed purchase agreement (the "***Proposed Purchase Agreement***") marked against the form asset purchase agreement (the "***Form APA***") provided to Potential Bidders by the Debtors or, if applicable, the Stalking Horse Agreement (as defined below), pursuant to which the Potential Bidder proposes to effectuate a Sale Transaction, including:  (a) a redlined copy of the Proposed Purchase Agreement to show all changes requested by the Qualified Bid against the Form APA or, if applicable, the Stalking Horse Agreement; (b) specification of the proposed Purchase Price allocation, if applicable; and (c) any requested changes to any exhibits or schedules to the Form APA or, if applicable, the Stalking Horse Agreement.

9. <u>Financial and Adequate Assurance Information</u>. A Bid must contain financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale Transaction, including without limitation:

    a. financial and other information setting forth the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party,

    b. current financial statements or similar financial information certified to be true and correct as of the date thereof,

    c. proof of financing commitments (if needed) to close the applicable Sale Transaction(s) (not subject to, in the Debtors' sole discretion, any unreasonable conditions),

    d. contact information for verification of such information, including any financing sources, and

e.      any other information reasonably requested by the Debtors necessary to demonstrate that the Potential Bidder has the ability to close the applicable Sale Transaction(s) in a timely manner.

10.  No Financing or Diligence Outs. A Bid must not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of diligence, or on the receipt of any regulatory or third party approvals other than as explicitly set forth herein, but may be subject to the accuracy at closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

11.  Representations and Warranties. A Bid must include the following representations and warranties:

a.      statement that the Potential Bidder had an opportunity to conduct all due diligence regarding the Assets to be purchased under such Bid prior to submitting the Bid,

b.      statement that the Potential Bidder relied solely upon its own due diligence in making its Bid and that the Potential Bidder did not rely and will not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever (including by any of the Debtors or their advisors or other representatives) whether express, implied, by operation of law or otherwise, including regarding the completeness of any information provided in connection therewith or the Auction (if any),

c.      statement that the Potential Bidder acknowledges that the Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees,

d.      statement that the Potential Bidder agrees to serve as Back-Up Bidder if its Qualified Bid is selected as the second highest or otherwise best Qualified Bid after the Winning Bid with respect to any of the Assets,

e.      statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid,

f.      statement that all proof of financial ability to consummate the applicable Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct, and

g.      statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

12.  Required Approvals

a.      If applicable, a statement that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and pay any related fees.

b.      If applicable, explanation or evidence of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate or own the applicable Assets, including, an explanation from the Potential Bidder's legal counsel to the Debtors' legal counsel of such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed Purchase Agreement.

c.      Evidence that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties.

13. <u>Authorization</u>. A Bid must include evidence of corporate or other authorization with respect to the submission, execution, and delivery of the Bid, participation in the Auction, and closing the Sale Transaction(s) contemplated by the applicable Proposed Purchase Agreement.

14. <u>Other Requirements</u>.

a.      A Potential Bidder must agree to serve as a Back-Up Bidder if such bidder's Qualified Bid is selected as the second highest or otherwise best Bid after the Winning Bid with respect to the relevant Assets.

b.      A Bid (other than a Credit Bid by one or more of the Secured Noteholders or their designee) must be binding, unconditional, and irrevocable until the first business day following the close of any Sale Transaction(s) with the Winning Bidder(s) or, if applicable, the Back-Up Bidder(s), for the applicable Assets.

c.      Unless the Potential Bidder has been selected as a Stalking Horse Bidder, a statement that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

d.      Provide contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.

e.      Written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the Proposed Purchase Agreement), and such other evidence of ability to consummate the transaction contemplated by the Proposed Purchase Agreement, the Bidding Procedures Order, and the Bidding Procedures, as acceptable in the Debtors' business judgment, in consultation with the Consultation Parties.

f.      Covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

g.      Detailed analysis of the value of any non-cash component of the Bid, if any, and back-up documentation to support such value.

### Review of Bids; Designation of Qualified Bids

The Debtors will evaluate all Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate, in the exercise of their business judgment, based upon the Debtors' evaluation of each Bid.

The Debtors will determine, in their reasonable business judgment and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualify as Qualified Bids (each Potential Bidder that submits such a Qualified Bid being a "***Qualified Bidder***") and will notify each Qualified Bidder of its status as a Qualified Bidder as soon as commercially reasonable following the Bid Deadline. To the extent reasonably practicable, counsel to the Debtors will provide copies of the Bids received, or summaries of the material terms of each Qualified Bid, to the Consultation Parties prior to the Auction.

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of its Qualified Bid during the period that such Qualified Bid remains binding as specified herein; *provided*, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures. The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid and to clarify or otherwise improve such Bid such that it may be designated a Qualified Bid.

In evaluating the Bids, the Debtors may take into consideration the following non-binding and non-exclusive factors:

1. the assets and liabilities included in or excluded from the Bid, including any executory contracts or unexpired leases proposed to be assumed;

2. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates;

3. any benefit to the Debtors' estates from any assumption or waiver of liabilities;

4. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing, financial wherewithal to meet all commitments, and required governmental or other approvals;

5. the impact on employees;

6. the impact on trade creditors; and

7. any other factors the Debtors may reasonably deem relevant, consistent with their fiduciary duties.

## Stalking Horse Bidders and Bid Protections

Upon entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment, and in consultation with the Consultation Parties, to: (a) select one or more stalking horse bids (each, a "***Stalking Horse Bid***," and a bidder submitting a Stalking Horse Bid, a "***Stalking Horse Bidder***") and enter into one or more asset purchase agreements with any Stalking Horse Bidder (a "***Stalking Horse Agreement***") with respect to some or all of the Assets; and (b) in connection with any Stalking Horse Agreement(s) and in recognition of such Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors may, in consultation with the Consultation Parties, determine to provide Bid Protections in the form of reimbursement of (i) the Stalking Horse Bidder's reasonable documented expenses not to exceed $75,000.00 and (ii) a break-up fee not exceed 3% of the cash portion of the Purchase Price of such Stalking Horse Bid. To the extent the Bid Protections do not otherwise comply with these Bidding Procedures, the Debtors reserve the right to seek Court approval of such Bid Protections.

## Credit Bidding

A Qualified Bidder who is a secured creditor shall be authorized subject to section 363(k) of the Bankruptcy Code to submit a credit bid on a dollar-for-dollar basis up to the full amount of the respective secured claim, including any accrued interest, expenses, and fees, for any of the Assets constituting such secured creditor's respective collateral only with respect to the collateral by which such secured creditor is secured (such bid, a "***Credit Bid***"); *provided that*, except with respect to the Secured Noteholders, the Debtors' rights to contest the right of any secured creditor to submit a Credit Bid are fully preserved; *provided further* that the rights of all parties other than the Debtors to contest the right of the Secured Noteholders to submit a Credit Bid are fully preserved.

Subject to the foregoing paragraph, each of the Secured Noteholders or a designee of the foregoing shall be deemed Qualified Bidders for all purposes and shall have the right to submit a Bid or Credit Bid for all or any portion of the loans under their secured notes in accordance with section 363(k) of the Bankruptcy Code with respect to some or all of the Assets, and any such Bid or Credit Bid will be considered a Qualified Bid to the extent received by the Bid Deadline; *provided that*, a Credit Bid shall not constitute a Qualified Bid if the Bid does not (a) include a cash component sufficient to pay in full, (i) all claims for which there are valid, perfected, and unavoidable liens on any Assets included in such Bid that are senior in priority to those of the party seeking to Credit Bid and (ii) any Bid Protections (if applicable), and (b) comply with the terms of the Bidding Procedures Order. In the event one or both of the Secured Noteholders or their designee submit a Credit Bid pursuant to these Bidding Procedures, such Secured Noteholder(s) or their designee must submit a Proposed Purchase Agreement prior to the Bid Deadline to be considered a Qualified Bid. Further, if a Credit Bid submitted by any Secured Noteholder has not

been withdrawn prior to the commencement of the Auction, such Bid shall become irrevocable, subject to the terms of these Bidding Procedures.

For the avoidance of doubt, any party that provides postpetition financing to the Debtors on a secured basis will be considered a secured creditor with the right to submit a Credit Bid, subject to the qualifications and reservations set forth above.

## Deposit

Other than a Credit Bid (if any), a Bid must be accompanied by a good faith cash deposit in the amount of no less than ten percent (10%) of the Purchase Price (a "***Deposit***"), unless otherwise agreed to by the Debtors (in consultation with the Consultation Parties) and a Potential Bidder. A Deposit must be deposited prior to the Bid Deadline with an escrow agent selected by the Debtors (the "***Escrow Agent***") pursuant to an escrow agreement to be provided by the Debtors. To the extent a Qualified Bidder increases the Purchase Price before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Deposit so that it equals ten percent (10%) of the increased Purchase Price.

Within ten business days after the Auction (if any), the Debtors will direct the Escrow Agent to return the Deposits of all bidders, together with interest accrued thereon (if any), other than the Deposits of the Winning Bidder(s) and Back-Up Bidder(s). Within five calendar days after the Back-Up Bid Expiration Date, the Debtors will direct the Escrow Agent to return the Deposit(s) of the Back-Up Bidder(s), together with interest accrued thereon (if any). Upon the authorized return of any such Deposits, the Bid associated therewith will be deemed revoked and no longer enforceable.

Each Winning Bidder's (or, if applicable, Back-Up Bidder's) Deposit (if any) will be applied against the portion of the Purchase Price of its Winning Bid (or, if applicable, Back-Up Bid) upon the consummation of the applicable Sale Transaction. In addition to the foregoing, the Deposit of any Qualified Bidder will be forfeited to the Debtors if (a) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein or with the Debtors' prior written consent, during the time the Qualified Bid remains binding and irrevocable or (b) except as provided herein, the Qualified Bidder is selected as a Winning Bidder and fails to enter into the required definitive documentation or to consummate the applicable Sale Transaction in accordance with these Bidding Procedures.

## Auction Procedures

If the Debtors receive more than one Qualified Bid with respect to any of the Assets, the Debtors will conduct the Auction on **April 29, 2026 beginning at 9:00 a.m. (prevailing Central Time)**, or such other date as may be determined by the Debtors in consultation with the Consultation Parties either (i) at the offices of Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, (ii) virtually, or (iii) at such other location, as selected by the Debtors, in each case pursuant to procedures to be timely filed on the Court's docket in advance of the commencement of the Auction. The Auction will be conducted openly and will be transcribed or recorded. Only Qualified Bidders and their professionals will be eligible to attend and participate

in the Auction.  Professionals and/or other representatives of the Debtors and of any of the Consultation Parties will be permitted to attend and observe the Auction.

Each Qualified Bidder will be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any Bid, the bidding, or the Auction.

At the Auction, bidding for the Assets will start with the highest or otherwise best purchase price and/or terms received as determined by the Debtors, in consultation with the Consultation Parties, and bidding will proceed thereafter in minimum bid increments of not less than $250,000 (a "***Minimum Overbid Amount***").  The Debtors reserve the right to adapt and may increase or decrease the Minimum Overbid Amount at any time during the Auction.  Qualified Bidders may increase their bids at the Auction, including with cash, cash equivalents, or other forms of consideration.

The Debtors may, in the exercise of their business judgment, adopt rules for the Auction consistent with these Bidding Procedures and the Bidding Procedures Order that the Debtors, in consultation with the Consultation Parties, reasonably determine to be appropriate to promote a competitive auction.  Any rules developed by the Debtors will provide that all Bids in the Auction will be made and received on an open basis, and all bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a Bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders.  Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous Bid at the Auction.  The Auction will be conducted openly and will be transcribed or recorded.

The Debtors may, in the exercise of their business judgment and upon consultation with the Consultation Parties, identify the highest or otherwise best Qualified Bid(s) as the winning bid(s) (each a "***Winning Bid***" and, the bidder(s) submitting such Bid(s), each a "***Winning Bidder***").  The Debtors, in consultation with the Consultation Parties, may identify which Qualified Bid(s) constitute the second highest or otherwise best Qualified Bid(s) and deem such second or otherwise best Bid(s) as back-up bid(s) (each a "***Back-Up Bid***," and the bidder(s) submitting such Bid(s), each a "***Back-Up Bidder***").  Back-Up Bid(s) will remain open and irrevocable until the earliest to occur of: (a) the applicable "outside date" for consummation of the Sale Transaction(s) contemplated by the Back-Up Bid(s), (b) consummation of the Sale Transaction(s) with a Winning Bidder, and (c) release of such Back-Up Bid(s) by the Debtors in writing (such date, the "***Back-Up Bid Expiration Date***").  If a Sale Transaction with a Winning Bidder is terminated prior to the applicable Back-Up Bid Expiration Date, the applicable Back-Up Bidder with respect to the applicable Asset(s) will be deemed the Winning Bidder for such asset(s) and will be obligated to consummate the Back-Up Bid as if it were the Winning Bid for such asset(s).

Within one business day after the Auction, (a) the Winning Bidder(s) will submit to the Debtors fully executed documentation memorializing the terms of the Winning Bid(s) and (b) the Back-Up Bidder(s) will submit to the Debtors execution versions of the documentation memorializing the terms of the Back-Up Bid(s).  Neither a Winning Bid nor a Back-Up Bid may

be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

At any time before entry of an order approving any Sale Transaction, the Debtors reserve the right to and may reject a Qualified Bid if such Qualified Bid, in the Debtors' judgment (and in consultation with the Consultation Parties), is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (c) contrary to the best interests of the Debtors and their estates.

## Selection of Winning Bid(s) and Back-Up Bid(s)

No later than one business day following the selection of one or more Winning Bidder(s), the Debtors will file with the Court and post on the website of the Debtors' claims and noticing agent a notice of the Winning Bid(s), Winning Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s), as applicable. The Debtors will not consider any Bids submitted after the conclusion of the Auction unless they determine in good faith, after consulting with the Consultation Parties, that their fiduciary duties require otherwise.

## Consultation Parties

The term "*Consultation Parties*" as used in these Bidding Procedures means (a) the Secured Noteholders and their advisors, (b) the advisors to any official committee of unsecured creditors or other statutory committee appointed in these chapter 11 cases, and (c) any other party that the Debtors deem appropriate; *provided that*, to the extent any Consultation Party submits a Bid for any Assets (including a Credit Bid), such party shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures; *provided further*, notwithstanding anything herein to the contrary or in any interim or final order authorizing the use of cash collateral entered by the Court, the Debtors will only be required to reasonably consult with any Consultation Party, and any such Consultation Party will not have any consent rights with respect to these Bidding Procedures.

## Notices Regarding Assumption and Assignment

The Debtors will provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Hearing

The Debtors will seek entry of an order authorizing and approving, among other things, the applicable Sale Transaction(s) at a hearing before the Court to be held on **May 8, 2026 at [●] [a.m. / p.m.] (prevailing Central Time)** (the "*Sale Hearing*"). The Sale Hearing may be adjourned or continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice prior to or making an announcement at the Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party.

The Debtors may elect to seek approval of a Sale Transaction in advance of the Sale Hearing.  To the extent the Debtors determine to do so, notice will be provided for alternative hearing dates and related timelines.

Each Winning Bidder will appear at the Sale Hearing and be prepared to have a representative testify in support of its Winning Bid and the Winning Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under all executory contracts and unexpired leases to be assumed and assigned as part of the applicable Sale Transaction.

Objections to any Sale Transactions, including any objection to (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, (b) any objection with respect to the conduct of the Auction and/or the Successful Bidder or Back-Up Bidder, or (c) entry of the Sale Order (each such objection, a "**Sale Objection**"), must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (v) be filed with the Court and be served on the Objection Notice Parties (as defined in the Sale Notice) by the Sale Objection Deadline; *provided*, that the Debtors may extend such Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection will be heard by the Court at the applicable sale hearing (which may be the Sale Hearing).

Any party who fails to file a Sale Objection with the Court and serve it on the Objection Notice Parties by the Sale Objection Deadline will be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the consummation of the applicable Sale Transaction and any related relief requested by the Debtors.

## Consent to Authority as a Condition to Bidding

All Potential Bidders that participate in the bidding process will be deemed to have (a) consented to the core jurisdiction of the Court with respect to these Bidding Procedures, the bid process, the Auction, any Sale Transaction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction, (b) waived any right to a jury trial in connection with any disputes relating to any of the foregoing, and (c) consented to the entry of a final order or judgment in any way related to any of the foregoing if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment in order to facilitate a value-maximizing sale of the Assets, and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties, applicable law, and the Local Rules and Procedures for Complex Cases in the Southern District of Texas: (a) modify these Bidding Procedures;

(b) waive terms and conditions set forth herein with respect to all Potential Bidders; (c) extend the deadlines set forth herein; and (d) announce at the Auction the modified or additional procedures for conducting the Auction.  If a Consultation Party or the U.S. Trustee determines in good faith that any modification to these Bidding Procedures or the Bidding Procedures Order, or any adoption of new rules, procedures, or deadlines, would not be consistent with this paragraph or these Bidding Procedures or the Bidding Procedures Order, such Consultation Party or U.S. Trustee may file an objection with the Court, and no such modification or adoption shall become effective until such objection is resolved.  Nothing in these Bidding Procedures will obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

## **Fiduciary Out**

Nothing in these Bidding Procedures will require the board of managers of the Debtors (or, as applicable, the Special Committee thereof) to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent such board of managers (or, as applicable, Special Committee) or such similar governing body determines in good faith, after consultation with counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

**<u>EXHIBIT 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | § | **Case No. 26-90393 (CML)** |
| | § | |
| **VIRIDIS CHEMICAL, LLC, *et al.*,** | § | **(Chapter 11)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

 **PLEASE TAKE NOTICE** that, on March 8, 2026, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed the *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Certain Bid Protections in Connection With A Stalking Horse Agreement, if Any, (III) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (IV) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale Of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief]* [Docket No. [●] (the "***Bidding Procedures Motion***").

 **PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered that certain order [Docket No. [●]] (the "***Bidding Procedures Order***")[2] approving, among other things, the Bidding Procedures, which establishes the key dates and times related the sale of all or substantially all of the Debtors' assets (collectively, the "***Assets***"), including an Auction (if necessary) and a Sale Hearing.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  4584 Kingwood Drive, Ste. E #152, Kingwood, Texas 77345.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms in the Bidding Procedures shall control in all respects.

> Copies of the Bidding Procedures Order, the Bidding Procedures, the Stalking Horse Agreement, and any other related documents are available upon visiting the Debtors' restructuring website at  https://dm.epiq11.com/ViridisChemical

## Important Dates and Deadlines

- **Indication of Interest Deadline**. Any person or entity interested in bidding on any of the Assets must submit a non-binding indication of interest ("***Indication of Interest***") on or before **April 15, 2026 at 5:00 p.m. (prevailing Central Time)** (the "***IOI Deadline***").

- <u>**Bid Deadline**</u>. Any person or entity interested in bidding on any of the Assets must submit a Qualified Bid on or before **April 27, 2026 at 5:00 p.m. (prevailing Central Time)** (the "***Bid Deadline***").

- <u>**Auction**</u>. If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction, which has been scheduled for **April 29, 2026 at 9:00 a.m. (prevailing Central Time)** either (a) the offices of Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002,  (b) virtually, or (c) at such later date and time and such other location as selected by the Debtors in accordance with the Bidding Procedures.

- <u>**Sale Objection Deadline**</u>. Objections to any Sale Transactions, including any objection to (i) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, (ii) any objection with respect to the conduct of the Auction and/or the Successful Bidder or Back-Up Bidder, or (iii) entry of the Sale Order (each such objection, a "***Sale Objection***"), must be (a) filed with the Court in accordance with the Bidding Procedures and (b) served on the Objection Notice Parties (as defined herein) on or before **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** (the "***Sale Objection Deadline***").

- <u>**Sale Hearing**</u>. A hearing to approve and authorize the sale of any of the Assets to one or more Winning Bidders will be held before the Court on or before **May 8, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** or such other date as determined by the Court.

## Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court by no later than the Sale Objection Deadline, and (e) be served on: (i) counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Matthew D. Struble and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: George R. Howard; (ii) counsel to the Majority Secured Noteholder, Haynes Boone, LLP, 2801 N Harwood St Suite 2300, Dallas, TX 75201, Attn: Ian Peck and Jordan Chavez; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson Ruff and Jana Whitworth; and (iv) counsel

to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases, (collectively, the "***Objection Notice Parties***").

The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

Any party interested in submitting an Indication of Interest and Qualified Bid should contact the Debtors' advisors: (a) Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Matthew D. Struble (mstruble@velaw.com) and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: George R. Howard (ghoward@velaw.com), or (b) Carl Marks Advisory Group LLC, 900 Third Avenue, 10th Floor, New York, NY 10022 Attn: Brian      Williams      (bwilliams@thecmagroup.com)      and      Ben      Godbout (bgodbout@thecmagroup.com).

## Reservation of Rights

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures; waive terms and conditions set forth therein with respect to all Potential Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; and alter the assumptions set forth therein; *provided* that the Debtors will not be authorized to make material modifications to the Bidding Procedures without further order of the Court. The Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE WILL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated: [____], 2026
Houston, Texas

/s/ [Draft]_____
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Abigail R. Emery (TX 24133039)
845 Texas Avenue, Suite 4700
Houston, TX 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
      aemery@velaw.com

-and-

Matthew D. Struble (TX 24102544)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716
Email: mstruble@velaw.com

-and-

George R. Howard (*pro hac vice* pending)
Emily C. Jungwirth (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: ghoward@velaw.com
      ejungwirth@velaw.com

***Proposed Counsel to the Debtors and Debtors in Possession***

## **EXHIBIT 3**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90393 (CML)** |
| | § | |
| **VIRIDIS CHEMICAL, LLC, *et al.*,** | § | **(Chapter 11)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | |

## NOTICE OF PROPOSED ASSUMPTION AND
## <u>ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS</u>

<div style="border:1px solid black; padding:10px;">

**PLEASE TAKE NOTE OF THE FOLLOWING DEADLINES:**

<u>Assumption and Assignment Objection Deadline</u>: **On or before May 5, 2026 at 5:00 p.m. (prevailing Central Time) or such deadline set forth in the applicable Supplemental Assumption and Assignment Notice.**

</div>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On [•], 2026, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Certain Bid Protections in Connection with a Stalking Horse Agreement, if any, (III) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (IV) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* [Docket No. [●]] (the "**Bidding Procedures Motion**").

2.       On [●], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") entered that certain order [Docket No. [●]] (the "***Bidding Procedures Order***") approving, among other things, the Bidding Procedures, which establish the key dates and times related the sale of all or substantially all of the Debtors' assets (collectively, the "***Assets***"), and the Assumption and Assignment Procedures to facilitate the fair and orderly assumption or assumption

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Viridis Chemical, LLC (0523); Viridis Chemical Payroll Holdings, LLC (2597); Viridis Chemical Payroll, LLC (4042); Viridis Chemical NE Asset Co 1, LLC (6489); and Viridis Chemical NE Asset Co 2, LLC (0436).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  4584 Kingwood Drive, Ste. E #152, Kingwood, Texas 77345.

and assignment of certain executory contracts (the "***Contracts***") or unexpired leases (the "***Leases***") of the Debtors.[2]

3.      Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice (this "***Cure Notice***") that they may seek to assume and assign to a Winning Bidder the Contracts or Leases listed on **Exhibit A** attached hereto (each, a "***Potential Assigned Contract or Lease***").  **You are receiving this Cure Notice because you may be a counterparty to a Potential Assigned Contract or Lease (a "*Contract/ Lease Counterparty*") that may be proposed to be assumed and assigned to a Winning Bidder in connection with a Sale Transaction.**

4.      If the Debtors assume and assign to a Winning Bidder a Potential Assigned Contract or Lease to which you are a party, on the closing date of the Sale Transaction, or as soon thereafter as practicable, you will be paid the amount the Debtors' records reflect is owing for **pre-bankruptcy filing arrearages** as set forth on **Exhibit A** (the "***Cure Cost***").  The Debtors' records reflect that all postpetition amounts owing under your Potential Assigned Contract or Lease have been or will be paid and will continue to be paid in the ordinary course until the assumption and assignment of the Potential Assigned Contract or Lease, and that other than the Cure Cost, there are no other defaults under the Potential Assigned Contract or Lease.

5.      The Debtors' inclusion of a Potential Assigned Contract or Lease on **Exhibit A** does not: (a) obligate the Debtors to assume any Potential Assigned Contract or Lease listed thereon or obligate a Winning Bidder to take assignment of such Potential Assigned Contract or Lease, or (b) constitute any admission or agreement of the Debtors that such Potential Assigned Contract or Lease is an executory contract or unexpired lease.  Only those Potential Assigned Contracts and Leases that are included on a schedule of assumed and assigned Contracts and Leases attached to the definitive sale agreement with any Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Winning Bidder.

6.      Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each Potential Assigned Contract or Lease listed on **Exhibit A** hereto will be subject to the Debtors' or any Winning Bidder(s)'s right to conduct further confirmatory diligence with respect to the Cure Cost of each Potential Assigned Contract or Lease and to modify such Cure Cost accordingly.  In the event that the Debtors or any Winning Bidder(s) determine that your Cure Cost should be modified, you will receive a notice pursuant to the Assumption and Assignment Procedures below, which will provide for additional time for you to object to such modification.

**I.      Assumption and Assignment Procedures**

7.      These Assumption and Assignment Procedures set forth below regarding the assumption and assignment of the Potential Assigned Contracts and Leases proposed to be assumed by the Debtors and assigned to the Winning Bidder(s) in connection with one or more Sale Transactions will govern the assumption and assignment of all of the Potential Assigned Contracts and Leases, subject to the payment of any Cure Costs:

---

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

**Assumption and Assignment Objections.** Any objections to the proposed assumption and assignment of any Potential Assigned Contract or Lease on any grounds, including without limitation, the amount of the proposed Cure Costs, if any, or the ability of a Winning Bidder to provide adequate assurance of future performance ("*Adequate Assurance*") (each, an "*Assumption and Assignment Objection*"), must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection, including, if applicable, the cure amount alleged to be owed to the objecting Contract/Lease Counterparty or the adequate assurance alleged to be required, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court no later than **May 5, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Assumption and Assignment Objection Deadline*"); and (e) be served on the Objection Notice Parties (as defined below).

**Objection Notice Parties**. Each Assumption and Assignment Objection must be filed with the Court and served on the following parties (the "Objection Notice Parties") so as to be received no later than the Assumption and Assignment Objection Deadline: (i) counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Matthew D. Struble and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: George R. Howard; (ii) counsel to the Majority Secured Noteholder, Haynes Boone, LLP, 2801 N Harwood St. Suite 2300, Dallas, TX 75201, Attn: Ian Peck and Jordan Chavez; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson Ruff and Jana Whitworth; and (iv) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases.

**Resolution of Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such Assumption and Assignment Objection will be resolved at the Sale Hearing, but such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion.  If an Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

**Modification of Assigned Contracts and Leases Schedule.** At any time prior to the closing of any Sale Transaction, the Debtors may (a) supplement the Potential Assigned Contracts Schedule with executory contracts or unexpired leases inadvertently omitted therefrom; (b) remove or add any Potential Assigned Contract or Lease from or to the list of executory contracts and unexpired leases ultimately selected as Potential Assigned Contracts and Leases that the Winning Bidder(s) proposes be assumed and assigned to it in connection with the Sale Transaction(s); and/or (c) modify the proposed Cure Costs.

**Supplemental Assumption and Assignment Notice.** In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly file with the Court, cause to

be published on the Case Website, and serve on each relevant Contract/Lease Counterparty a supplemental notice of assumption and assignment (the "**Supplemental Assumption and Assignment Notice**"). Each Supplemental Assumption and Assignment Notice will include the same information as would have been included in this notice.

**Supplemental Assumption and Assignment Objections**. A Contract/Lease Counterparty listed on a Supplemental Assumption and Assignment Notice may file an objection (a "**Supplemental Assumption and Assignment Objection**") on the same bases set forth above. All Supplemental Assumption and Assignment Objections must comply with the requirements set forth above, and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (a) the Assumption and Assignment Objection Deadline, or (b) seven calendar days following the service of such Supplemental Assumption and Assignment Notice.

**Resolution of Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files a Supplemental Assumption and Assignment Objection, the Winning Bidder(s) has designated that it intends to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court to resolve such objection, but such Potential Assigned Contract or Lease shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If a Supplemental Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

**Failure to Timely File Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty does not timely file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection: (i) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) shall be controlling and binding upon the applicable Contract/Lease Counterparty for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment thereof, notwithstanding anything to the contrary in any Potential Assigned Contract or Lease or any other document; (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption and assignment of the Potential Assigned Contract or Lease and the Cure Costs, if any; (iii) the Contract/Lease Counterparty will be forever barred and estopped from objecting to the assumption and assignment of such Potential Assigned Contract or Lease and rights thereunder, including any objection to the Cure Costs or the Adequate Assurance with respect to the applicable Potential Assigned Contract or Lease; and (iv) the Contract/Lease Counterparty will be forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Winning Bidder that any other additional amounts are due or other defaults exist, that conditions to assignment must be satisfied, or that there is any other objection or defense to the assumption or assignment of the applicable Potential Assigned Contract or Lease.

## II.      Additional Information

8.      Unless otherwise provided in the Sale Order, the Debtors will have no liability or obligation with respect to defaults relating to the Potential Assigned Contracts and Leases arising, accruing, or relating to a period on or after the effective date of assignment of such Potential Assigned Contract or Lease.

9.      Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice may be obtained free of charge at the website https://dm.epiq11.com/ViridisChemical dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Epiq Corporate Restructuring, LLC.

*[Remainder of page intentionally left blank]*

Dated: [____], 2026
Houston, Texas

/s/ *[Draft]*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Abigail R. Emery (TX 24133039)
845 Texas Avenue, Suite 4700
Houston, TX 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
         aemery@velaw.com

-and-

Matthew D. Struble (TX 24102544)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716
Email: mstruble@velaw.com

-and-

George R. Howard (*pro hac vice* pending)
Emily C. Jungwirth (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: ghoward@velaw.com
         ejungwirth@velaw.com

***Proposed Counsel to the Debtors and Debtors in Possession***